# Campbell *against* M'Donald.

A will contained the following item, viz: " I bequeath to the children of my brother, H. W., in equal parts, the six last instalments of the place which I and my wife conveyed to J. C., as the said instalments become due, which instalments amount to 1500 dollars; provided they are satisfied with this bequeathment, in lieu of what my letter to them promised them, on their arrival in this county; and in case they will insist upon the fulfilment of my promise in said letter, then this bequeathment to be void, and in place thereof, I bequeath to each of them six dollars, in addition to my promise to them in the said letter, provided my brother, H. W., of the county of D., of the parish of B., &c., his children, the within mentioned heirs in this sixth item, appear within six years from my decease, with sufficient proof, such as the court of Washington county, Pa., may think sufficient, that they are the within mentioned heirs, which I do require them to do, before they get any part of my estate." None of the children of H. W. were ever in this state. The plaintiffs (one of the children and her husband) executed within the six years a power of attorney to certain persons to demand the legacy.

*Held,* that the appearance mentioned in the will was an appearance *in propriâ*

*personâ* within the county: that this was a condition precedent, the non-performance of which deprived them of the legacy.

WRIT of error to the common pleas of *Washington* county.

This was an action of assumpsit, brought by William Campbell, and Jane his wife, late Jane Walker, the plaintiffs in error, against Edward M'Donald and William Berry, executors of the last will and testament of Andrew Walker, deceased, to recover a legacy claimed under said will. A case was stated, in the nature of a special verdict, by the counsel of the parties, for the opinion of the court, on which the court rendered a judgment for the defendants. By the case, as stated, it appears that Andrew Walker, the testator, late of Washington county, Pennsylvania, who died in the month of March 1834, in his lifetime, by his last will and testament, bearing date January 3, 1833, and duly proved after his death, among other things, bequeathed as follows: " Item 6. I bequeath to the children of my brother, Hugh Walker, in equal parts, the last six instalments of the place which I and my wife conveyed to John Cook, as the said instalments become due, which instalments amount to 1500 dollars; provided they are satisfied with this bequeathment in lieu of what my letter to them promised them on their arrival in this county; and in case they will insist upon the fulfilment of my promise in said letter, then this bequeathment to be void, and in place thereof, I bequeath to each of them six dollars, in addition to my promise to them in the said letter; provided my brother, Hugh Walker, of the county of Down, of the parish of Bangor, townland Ballysallach, in Ireland, his children, the within mentioned heirs in this sixth item, appear within six years from my decease, with sufficient proof, such as the court of Washington county, Pa., may think sufficient, that they are the within mentioned heirs; which I do require them to do, before they get any part of my estate." That Jane, the wife of William Campbell, the plaintiff, is one of the six children of the testator's brother, Hugh, mentioned in the will. That the plaintiffs, or either of them, never have appeared personally in the county of Washington, but have executed a letter of attorney to James Watson and David King, of Pittsburg, authorizing them, or either of them, to demand and receive the legacy, and upon the receipt thereof, to execute a release for the same. Under this letter of attorney, demand of the legacy being made by the attorneys of the plaintiffs, and payment thereof refused by the defendants, this suit was instituted afterwards, within six years after the death of the testator, with a view to compel payment of the same. No one of the six children of Hugh Walker, designated in the will as legatees, has ever appeared personally in the county of Washington, nor indeed within the United States; but five of them, including the plaintiffs, have by letter of attorney authorized James Watson and David King, before mentioned, to demand and recover their respective legacies claimed, who made demand thereof, and

[Campbell v. M'Donald.]

upon payment being refused, commenced suits therefor within the six years, and have made full proof that the claimants are the children of the said Hugh Walker. By the 28th item of the testator's will, the following disposition is made of the remainder or residue of his estate. " And further it is my will, that after the within mentioned bequeathments, as they are directed to be paid, are paid out of my estate, together with just debts, and other expenses that are directed to be paid, expenses of executing my will and costs of suits, if any should be against my estate, the remainder to be given by my executors to help poor and needy congregations of the Associate Reformed Church of the West, and to young men, low in circumstances, that are studying divinity under care of said church, on condition that the said young men will give their bonds to the officers of said young men's fund, that they will refund said money as soon as they are able, clear of interest; in either of these cases I do authorize my executors to use their own best judgment."

The question submitted to the court below upon these facts was, whether the plaintiffs were entitled to recover, and if they were, judgment to be entered in their favour for 166 dollars and 6 cents.

The court below rendered judgment for the defendants.

*Watson* and *M'Kennon*, for plaintiffs in error, cited 1 *Roper on Leg.* 556; 3 *Atk.* 364, 368; 3 *Whart.* 584.

*Gow*, for defendants in error, cited 1 *Madd.* 172; 1 *Ves. & Bea.* 248, 259.

The opinion of the court was delivered by

KENNEDY, J.—It is difficult, if not impossible, to raise a doubt as to what was the intention of the testator in this case. It is plain that he intended to make the six children of his brother Hugh, the objects of his bounty, only upon condition that they should appear in their proper persons, respectively, in the county where he resided at the time of making his will, and make proof of their identity, within six years after his death; otherwise, they were *not to have any part of his estate.* It is also pretty evident that their *arrival* in the county is made a condition precedent, and hence there can be *no liberality* extended to them, except it be in the construction of the clauses connected with the gift. Long *v.* Dennis, 4 *Burr.* 2055. And, accordingly, it has been argued on behalf of the plaintiffs, as they were required, by the terms of the will, to appear with sufficient proof of their being the children of the testator's brother Hugh, such as the court of Washington county should think sufficient; that this latter clause, referring the sufficiency of the proof to the judgment of the court, tends to show that the testator did not mean a *personal* appearance of the plaintiffs in the county, but such as would have been admitted and received in the court for the purpose of demanding and establishing by suit their claim, which might well be by attorney. This argument is certainly in-

x.—Q*

genious, and not without plausibility, to say the least of it; and, seeing there is no direct limitation over of the legacy in question, to any other person or persons, would, perhaps, have been entitled to consideration, were there not other clauses tending to repel it, and indeed going to show clearly that such was not the intention of the testator. There is nothing here in the nature of the condition, annexed to the gift by the testator, that is objectionable on the score of policy, or as being unfavourable to the interest and welfare of society, as in cases of conditions imposing restraints upon marriage. In cases of this latter description, courts have certainly gone far in disregarding the clearly expressed intention of the testator, for the purpose of getting rid of the restriction; and, in short, by a strained construction of the testator's language, have made legacies absolute that were plainly intended by him to be conditional only. Wheeler *v.* Bingham, 3 *Atk.* 365, 366, 367, 368; Garrett *v.* Pritty, 2 *Vern.* 293, *ca.* 284. It is not to be questioned, however, that the intention of the testator, as disclosed by the words of the will, all taken together, ought to be carried into effect by courts, unless found to be contrary to some rule of law. Ruston *v.* Ruston, 2 *Dall.* 244; 2 *Yeates* 60; Findlay *v.* Riddle, 3 *Binn.* 149; Lynn *v.* Daines, 1 *Yeates* 518; Turbett *v.* Turbett, 3 *Yeates* 187. In order to come at this intention, that it may be carried into effect, the words of the will are generally to be understood in their usual and most known signification; not so much regarding the propriety of grammar as their general and popular sense. Thus applying the same rule to discover the intention of the testator, that is observed for a like purpose, in the interpretation of statutes, in order that the will of the legislature may be ascertained and complied with. 1 *Chitty's Black. Comm.* 59, *and note per Chitty;* 2 *Black. Comm.* 379. Now the daily use of the word "appear," must satisfy every one, that the only sense in which it is used by all classes of people in general, is to appear in person, or to exhibit one's self so as to be visible, and every dictionary shows that this is also its grammatical sense. Besides, this is not all, for it has been held to be its legal meaning. In Sir William Drury's case, cited in Beawfage's case, 10 *Co.* 100, 101, where the condition of a bail bond, taken by Sir William, as sheriff, under the statute of 23 *Hen.* 6, *c.* 9, required that one Moore, whom he had arrested, should "appear *in person* at the day contained in the writ," whereas the words of the statute are, "shall appear at the day, &c.," generally, without the words "in person;" upon which it was objected, that the bond was void on account of these words being superadded, which were not in the statute. But "it was resolved, though it was true there was a verbal difference from the form prescribed by the statute, yet none in substance and effect; for he who is bailed ought to *appear in person,* for so much is implied in this word of the act ("appear"); and, therefore, at the common law, when any tenant or defendant was commanded to appear in any court, he ought, before the

[Campbell v. M'Donald.]

statute thereof made, in all cases to have *appeared in proper person.* And Lord Coke accordingly lays it down, 1 *Inst.* 128, *a,* that " by the common law, the plaintiff or defendant, demandant or tenant, could not appear by attorney, without the king's special warrant, by writ, or letters patent, but ought to follow his suit in his *own proper person.*" See also, *Fitz. N. B.* 59, to the same effect. It is true, however, that a personal appearance of either plaintiff or defendant in court, where a suit is brought and pending, is not now requisite, as that has been long since dispensed with in civil cases by statute. By statute, therefore, the word " appear" may be said to have acquired, in such cases, a technical meaning; and had the testator, in the present case, shown that he intended to use it in this sense, by connecting it with a suit or suits to be commenced in court by his brother's children, within the six years, for the legacies given to them by his will, doubtless their appearance in their proper persons, would not have been considered as being required by him in court, unless he had expressly declared that it should be so. But then the word does not seem to have any such connection here. His language, after giving the legacies to the six children of his brother in Ireland, is, " provided, &c., his children, the within mentioned heirs in the sixth item, appear within six years from my decease, with sufficient proof, such as the court of Washington county, Pennsylvania, may think sufficient, that they are the within mentioned heirs; *which I do require them to do, before they get any part of my estate.*" It is not said, to be sure, in the clause just recited, where they shall appear, but it is plain that he did not mean that they should appear *in the court* of Washington county, by attorney, by commencing a suit therein for the recovery of the legacy; nor did he suppose, I apprehend, that such a thing was or would be necessary to enable them to procure the requisite proof, and to call upon the court to judge of its sufficiency. It would seem to be in the county of Washington, where he resided, that he required them to appear, and not in the court of that county; because, immediately following the clause, bestowing upon them the 1500 dollars, he says, " provided they are satisfied with this bequeathment in lieu of what my letter to them promised them, *on their arrival in this county.*" Thus showing that he had previously made a promise to them of something, upon condition that they would come from Ireland to Washington county, where he resided, to be paid or performed by him, as soon as they should arrive; and showing also that the 1500 dollars, the legacy in question, was intended to be given upon the same condition and in satisfaction of the previous promise. If he intended to give them the 1500 dollars, without their coming to Washington county for it, he must have known that they could have received it without coming after it; and, therefore, instead of saying " provided they appear," &c., would have said " provided they *claim* or *demand* the same within six years," &c., such language would have left no doubt

whatever in regard to his meaning; and it is conceived, that if his intention was that they should receive the money without coming to Washington county, he would have employed it as being the most natural and ready that could have occurred to express his purpose. It has been said that the testator could not have had the same motive for annexing the same conditon to the legacy, that he did to the promise, because he could not expect to obtain any comfort or happiness, by means of the former, from the society of the legatees, who were, with the exception of their father, as it would appear, his nearest relations. This would have great weight, and might be sufficient to turn the scale in favour of the legatees, if the language of the testator were ambiguous, but we think it susceptible only of one meaning. And although no rational motive can be discovered for the will of the testator, yet if his intention be expressed in clear and unambiguous terms, it must stand and be regarded as his will. *Stat pro ratione voluntas.* The condition, though arbitrarily imposed upon the legatee, yet must be strictly complied with, otherwise he cannot claim the legacy. Upon this principle, Sir William Grant, in Burgess *v.* Robinson, 3 *Meriv.* 7, where the testator gave legacies to his three nephews, as soon as they should arrive in England, or claim the same, provided they should arrive or claim the same within three years after his death, and if they should not, then part of the legacies to go over, held that the condition was not performed by one of the legatees arriving in England and making his claim after the time specified, although ignorant till then of the will or of the testator's death; and no advertisement published or made for legatees. So the plaintiffs in this case, having failed to perform the condition, though seemingly a very arbitrary one, are not entitled to receive the legacy claimed by them. It will, therefore, fall into the residuum of the estate, and go to the residuary legatees.

Judgment affirmed.