3 G　169<br/>28 SC　581

# Jones' Appeal.　Winebrenner's Appeal.

1. Where a man directs by will that his executors shall sell his lands, or perform any other trust created by his will, or when he creates a trust without saying who shall execute it, and appoints an executor, the execution is intrusted to him by operation of law, and the Orphans' Court alone have jurisdiction.

2. Where a testator appoints a person by name to execute a trust created by his will, and then makes the same person executor also, the trust is not annexed to his office as executor, and the jurisdiction belongs to the Common Pleas.

3. Where land in the same will is first devised to one, and afterwards to another, they shall take it between them.

4. In the construction of a will the general intent, although first expressed, shall overrule the particular intent.

5. In general, when a legacy is given and no time of payment mentioned, it is not payable until a year from the death of the testator, nor does it carry interest, except in the case of a child or grandchild not otherwise provided for.

6. From the time a legacy becomes payable it carries interest, even though the legacy is to come out of a part of the estate which cannot be recovered until long after the year has expired.

APPEALS from the decrees of the Orphans' Court of *Philadelphia.*

Exceptions to auditor's report.

*J. Murray Rush,* for appellant.

*Guillou* and *Phillips,* for appellee.

The opinion of the court was delivered March 17, 1855, by WOODWARD, J.—It is said the Auditor's Report, made to and confirmed by the Court of Common Pleas in 1839, decided Miss Jones' right to the legacy she claims under her grandfather's will, and that no appeal having been taking from that decree, all parties are concluded thereby. On the part of Mr. Winebrenner it is objected, that this report having been lost sight of, and not submitted by the last auditor, whose report is now up for review, we can take no notice of it on the present appeal. We do not think so. A prior adjudication of the very question now before us by a court of competent jurisdiction, would conclude the parties; and though overlooked by the last auditor, we would not hesitate to hold them to it. But had the Common Pleas jurisdiction? If they had not, their decree settled nothing. Allen Armstrong made his will and appointed executors to execute it. John Gethens, the acting executor, settled several accounts in the Orphans' Court, and then, in some manner not explained to us, transferred the estate and

further execution of the will, to the Pennsylvania Company for Insurance of Lives and Granting Annuities, who assumed the trust, and in 1839, filed their first account in the Common Pleas. An auditor was appointed thereon, who made report, which, after exceptions filed, was confirmed by the court, and from that decree an appeal was taken.

Now, although the 15th sec. of the act of 14th June, 1836, relating to assignees and trustees, confers jurisdiction on the Common Pleas in trusts created by will, as well as by deed, yet the proviso excepts such testamentary trusts as are vested in executors or administrators, who are by existing laws amenable to the Orphans' Court.

The judicial construction of this section is, that if the trust be vested in the executors, *qua* executors, or *ratione officii*, and not *nominatim*, it is within the proviso, and not subject to the jurisdiction of the Common Pleas. Where a man directs by will that his executors shall sell his lands, or perform any other trust created by his will, or where he creates a trust without saying who shall execute it, and appoints an executor, the execution is intrusted to him by operation of law, and the Orphans' Court alone have jurisdiction.

But where the testator appoints a person by name, to execute a trust created by his will, and then makes the same person executor also, the trust is not annexed to his office as executor, and the jurisdiction belongs to the Common Pleas. *Zane's Estate*, 4 Wh. 179; *Barnitz's Appeal*, 9 W. 300; *Baird's Case*, W. & S. 288. *Moody's Lessee* v. *Fulmer et al.*, ante, 17.

In the will before us there was no appointment of a trustee, *nominatim ;* the trusts expressed were all annexed to the office of the executors, and that they were amenable to the Orphans' Court will abundantly appear from consulting the act of 29th March, 1832, relating to Orphans' Courts, and the act of 24th Feb., 1834, respecting executors and administrators. This case falls then within the proviso to the 15th sec. of the act of 1836, and it follows, that the trust devolved by the executors upon the Insurance Company, was and is, within the exclusive jurisdiction of the Orphans' Court, and of course that the proceedings in the Common Pleas in 1839, were *coram non judice* and null. I was anxious to believe that these proceedings were really in the Orphans' Court, and entitled in the Common Pleas by misprision of the clerk, but it is impossible, for every step, from the filing of the account to the final decree, plainly appears to have been taken in the Common Pleas, and the record comes before us, certified by the prothonotary, under the seal of that court. If entitled to any faith and credit whatever, it is a record of the Common Pleas, and not of the Orphans' Court,

and for this reason we can allow it no effect in the present inquiry.

The question, then, of Miss Jones' right to the legacy she claims, still open, is made, in the argument, to depend on a verbal repugnancy between certain provisions in her grandfather's will. It is admitted, that the 6th clause, if it can be supported, gives the legacy; but the argument is, that the 6th is repealed by the 18th and 19th clauses, and that the testator, after giving Miss Jones a pecuniary legacy, gave his whole estate, real and personal, to his son Allen, subject to certain specific charges, which do not embrace the legacy. The rule is as old as Littleton's text, that if a man at divers times, makes divers testaments, and divers devises, yet the last devise and will made by him, shall stand; and Lord Coke's comment thereon is, that in one will, where there be divers devises of one thing, the last devise taketh place. Coke Litt. 13–11, p. 112*. But this rule has been much controverted, and the better opinion seems to be as expressed in Viner's Abg't, vol. 8, p. 152, that where land in the same will is first devised to one, and afterwards to another, they shall take it between them, notwithstanding my Lord Coke's opinion, that the latter clause revokes the first. 1 Vernon, 30; 3 Leon. 11; Cro. Jac. 49; and see note to p. 541, Eng. ed. of Plowden.

The anxiety which judges have evinced to avoid resorting to the unsatisfactory principle of construction which rejects one part of a will to give effect to another, has led to the more conservative rule, now well established, that the general intent, although first expressed, shall overrule the particular; and to effectuate the general intent, courts have not unfrequently transposed clauses, and supplied, rejected, and even changed words. 1 Y. 518; 3 Bin. 150; 4 Barr, 937; 7 W. & S. 279; 1 Par. 457; 2 Wms. Ex'rs, 789; *Jesson* v. *Wright*, Bligh, 56; 11 Mass. 528; 11 Gill & John. 185; 9 East, 366; 1 P. W. 286; 12 East, 515; 9 Vesey, 566; 2 Vesey, 276.

"The best rule in the construction of wills," said YEATES, J., in *Findley* v. *Biddle*, 3 Bin. 150, "is to find out first the general intent, and then, as far as language and grammar will admit, to interpret particular expressions accordingly; and in order to give effect to the general intent, the court will overlook a particular intent inconsistent therewith."

The reason of the old rule was, that, as between inconsistent clauses, the last was evidence of the latest intention of the testator, but it seems more reasonable to presume that a man having expressed a clear purpose, does not intend in the same instrument to change it by what he says in reference to other subjects; and besides, according to all the maxims of interpretation which obtain now a days, we are, in looking for the

general intention, to take the whole will together, to construe it, as the phrase is, by its four corners.   Where no general intent is deducible to control particular and substitutionary clauses, the old rule is applicable to cases of invincible repugnancy, but it should be an extreme case in which a devise or bequest, distinctly expressed, is suffered to be repealed by subsequent words, employed not for that purpose, but to define and limit other gifts.

The will before us was drawn apparently by the testator himself, who made the common mistake of overrating the productiveness of his estate.   It consists of twenty-five sections and two codicils, and is full of complicated details and contingent provisions, expressed sometimes in inaccurate and ambiguous phrases.   Now, after entangling himself in such meshes of testamentary purposes, and obscuring his leading ideas by so many words, it is not perhaps to be wondered at that in making his son residuary devisee, he should have used language without due regard to all that had gone before, but if we should give that language the force claimed for it, merely by reason of its position, we should violate the intentions of the testator, and set up a disputed rule of law, in place of the will he left.   According to the scheme of distribution in his mind his wife and children were evidently the prominent objects of his bounty.   He provided for his wife by annuity charged upon his real and personal estate generally.   He had three children, two daughters by a former marriage, and a son by the last, and for them he provided annuities to issue out of principal sums or funds, which he indicated by amounts, but not by the part of the estate from which they were to come, and which principal sums were to go, at the death of his son and daughters, to any children they might have.   To two married sisters, in New York, he also gave annuities, which he afterwards controlled by provisions in the codicils not material now to be noticed.   After some bequests of personal chattels to his wife and son in the 3d and 4th clauses of his will, he gave, by the 5th clause, to his wife an annuity of $600 for life or during widowhood, to be paid her quarterly out of the incomes of his real and personal estates.

By the 6th and 7th clauses he gave each of his daughters, Jane W. and Hetty Maria, an annuity of $400 for life, to be paid quarterly, without specifying the source, and if they should die, leaving issue, he gave to the children of each daughter the sum of $6,660.

By the 11th clause he gave his son Allen an annuity of $400 until sixteen years of age, of $500 until twenty-one, and of $750 until twenty-five.   Then, after various devises over, in case of the death of either of his children, and after providing for his sisters, he says, in the 18th clause: "*In case my said*

*son Allen shall attain to the age of 25 years, then I give and devise to him, for and during life, the whole income of my real and personal estates which may yearly remain after payment of the taxes, repairs, and the expenses attending the management of my estate, and the several yearly sums hereinbefore given to my wife and daughters, and my sisters in New York.*" By the 19th clause, if Allen should die, leaving lawful issue, they were to take all he had or might have been entitled to at 25 years of age.   Hetty Maria died unmarried and without issue. Jane married W. H. Jones, and died in giving birth to her only child, the present claimant.   Allen still lives, and has assigned all his interest to Mr. Winebrenner, who represents him in these appeals.   Now I agree that the legacy of Miss Jones was not charged on the real estate, in such sense, that if the testator had sold his real estate after making the will, the legacy would have ·lapsed.   He, doubtless, thought of the legacy as a fund which was to yield the annuity of $400 for his daughter during life, and at her death to go to any child or children she might leave.

In the same manner he contemplated another fund of $8,330, which was to yield Allen's annuity of $500, as is proved by the disposition he made of it in the 4th clause, in the event of Allen's death before 21 years of age.   And in several other places in the body of the will and in the codicils, we find him speaking of the "*principal*," the "*principal* sum," and "the *principal or estate*," in allusion to the sources of the annuities given to his son and daughter; so that we cannot doubt he had in his mind's eye, several distinct and separate funds accumulated out of the income of his real or personal estate, and ·devoted to the production of the specified annuities during the lives of his children, and after their deaths to go over to their children.   The fund set apart for Jane's annuity, vested in her daughter the instant of her own decease, and though not specified in the 18th clause, among the exceptions out of the residue, it is by the most necessary implication carried along with the several yearly sums there alluded to.   "*Yearly sums*," stood in the testator's mind, not only for the specified annuities, but for the funds which produced them.   Supposing his daughter to have children, he no more meant to give Allen the funds bequeathed to his grandchildren, than he did the annuities given to his daughter.   All over the will, his intention to provide for his grandchildren is apparent.   They were to take Allen's annuity fund in the event of his death without children, and shall it be said he did not mean they should succeed to their mother's annuity fund; and this against his express declaration in the 6th and 7th clauses?   Such an interpretation cannot be tolerated.   But be it, that the verbiology of the 18th

clause is obscure and insufficient of itself to entitle the grand-child to the payment of her legacy before the whole estate goes to Allen, the general intent is discernible from every part of the will, to provide for the grandchild, and that must not be violated. The expressions of the 18th clause, if strictly con-strued, are an inaccurate reference to previous grants, and "Jarman" lays down the rule, p. 425, that a devise in clear and technical terms will not be controlled by expressions in a subsequent part of the will inaccurately referring to the devise, in terms which, had they been used in the devise itself, would have conferred a different estate, if the discrepancy appear to have sprung merely from a negligent want of adherence to the language of the preceding devise. And see *Hennerscholtz Estate*, 4 Har. 436. The discordance here sprung from nothing else than such negligence, and if we should apply the old rule of making the last words imply the latest intention, we should suffer a blunder of the testator or his scrivener to defeat his plainly expressed intention, and to wrong one of the objects of his bounty. If it be asked on what principle, in view of this construction, Allen takes those portions of the estate which were to yield the annuities of the widow and of Hetty Maria, the answer is at hand. The widow's annuity was to come out of the income generally, no specific sum being designated for the purpose, and no devise over after her death except to Allen. Hetty Maria dying without issue, the devise over of the prin-cipal of her annuity never took effect. But in Jane's case there was a devise over of all the principal, and a birth of issue.

To make a more minute analysis of the will, would afford further support to these views, but we waive it, and content our-selves with ruling on the principles indicated, that Miss Jones is entitled to her legacy according to the sixth clause in the will, and that there was no error in the decree allowing it to her.

Then, as to interest. In general, where a legacy is given and no time of payment mentioned, it is not payable till a year from the death of the testator, nor does it carry interest, except in the case of a child or grandchild, not otherwise pro-vided for. 5 Bin. 475; 14 S. & R. 238. But from the time the legacy becomes payable, it carries interest, even though the legacy is to come out of a part of the estate, which can-not be recovered till long after the year has expired, 9 W. 447; 2 Bin. 231. It results from what we have said, that on the death of Mrs. Jones, the principal of her annuity was immediately payable to her daughter, and as interest is the compensation for delay in payment of money, she is enti-tled to interest also. But the estate was not competent to pay the legacy, and keep up the annuities to the widow and Allen. Then there should have been abatement, not of the

[Crawford *v*. Neff.]

widow's annuity, because that was in lieu of dower, but between Allen's annuity and Miss Jones' legacy, 2 Vesey, 417; 3 Atkyns, 693. But Miss Jones' interest was not called for, and the auditor says it would now be a hopeless task to review the whole estate to ascertain from time to time, with any precision, what periodical abatement should have been made from Allen's annuities. We think so, and will not overhaul the estate for that purpose. But it being understood that the widow is now dead, and the portion of the estate that was in stocks having considerably appreciated, there is now, if we understand the auditor correctly, personal estate enough to pay the principal of Miss Jones' legacy, the allowances made to Allen's assignee, and to leave a residuum, how large is not stated. As against Miss Jones' claim of interest, we think the allowances made to Mr. Winebrenner should be stricken out. Although we will not overhaul the estate, so far as it has been administered, for the purpose of giving her her interest, she has a right to be first served out of the funds on hand, and as far as they will go towards satisfying her first claim to interest on her legacy, they should be so applied.

### DECREE.

And now, to wit, 17th March, 1855. These causes having been argued by counsel, and fully considered by the court, it is ordered, adjudged, and decreed, that the decree of the Orphans' Court allowing Jane W. Jones the legacy claimed of $6,660 be confirmed, and that so much of said decree as relates to interest on said legacy, and to the allowances made by the auditor, to David Winebrenner as assign of Allen Armstrong, be reversed and set aside, and that the amount of said allowances be paid to Jane W. Jones, on account of the interest due in her said legacy, and that the account be referred to J. K. Findlay, Esq., to ascertain and report what amount of personal estate still remains applicable to the interest on said legacy.