## Lifter. Estate (No. 2)

Before Bolger, Acting P. J.; Lefever, Saylor and Shoyer, JJ.

270

274

278

*Blanc, Steinberg & Balder* and *Walter B. Gibbons,* for exceptants.

*Speiser, Satinsky, Gilliland & Packel,* contra.

SAYLOR, J., May 22, 1953.—In an extended discussion of the facts, the words of the will and the applicable law, the opinion of Bolger, J., upholds the contention of the federation. He found that the time phase is not a fundamental provision of the gift but merely a direction as to administration of the res. He concluded that the phrase "within five years of my death" is ambiguous and by decree changed the wording of the provision in parentheses above quoted by supplying the word "wife's". Thereby the phrase is made to read ("beginning such erection within a period of not more than five years from the date of my wife's death").

We can find no error in this conclusion. Our whole difficulty here results from the exclusion of the word "wife's" from the clause as it appears in the probated will. With it in the clause all problems are solved. However expertly drawn a will may be—and such is this—its transcription in final form for execution may well result in a harmless typographical error or in a consequential misspelling of a word or words or the actual omission thereof. The result may be such an ambiguity as calls for revision by the court. Any revision affecting substantial interests can of course be made only when fully justified by the circumstances of the case and when in complete harmony with the intentions of testator as clearly and unmistakably drawn from a reading of the complete instrument.

In the will before us there are 14 references to testator's death. There are six instances where the phrase, "after my death" is used, four where he said, "at the time of my death", and two where he said, "from the date of my death", one where he said, "my death", and one, "before my death".

On the other hand, on one occasion appear the words, "upon the death of my wife", and on four occasions the words, "at the time of the death of my said wife" are used. Counsel for the collateral heirs argues that testator showed he knew what he was doing when he distinguished between his wife's death and his own. We believe that to be so, but, contrariwise, we also believe that with the frequent use of phrases relating to either his or his wife's death the testator's will—as finally typed—could very well contain an error, one way or the other, in at least one of the 19 places where the word "death" occurs.

Hence, we support the conclusion of the opinion judge in finding that in the first sentence of paragraph eighth (A) testator meant to say, "my wife's death", and not "my death". We believe that otherwise it must follow that testator must be considered as having perpetrated a hoax on the charity he sought to help and as having created a trap to catch it in a building enterprise he would encourage the charity to undertake and then deny it the means to complete.

We believe that testator intended that the federation should begin the erection of the building within five years of his wife's death, not his own. This is manifest from testator's directions that:

1. The building to be erected by the charity is to be built solely with the fund bequeathed by decedent which could not pass into the possession of the charity until the life estate of the wife had terminated; and

2. The charity was to erect the kind of building which would be most urgently needed at the time of

distribution, but the only distribution referred to is that to be made upon the death of the wife. (See the introductory statement of the eighth item of the will, supra.)

It is also apparent that literal application cannot be made of the provision, "in case the conditions of the foregoing bequest to the Federation . . . are not met within 60 days from the date of my death and the gift to the Federation therefore does not become operative . . .". By testator's own words the conditions could not be fulfilled within 60 days after his death:

1. The building was to be erected "not more than five years from the date of my death". Accepting for the moment that "my death" is decedent's death, the 60-day limitation conflicts with the five-year limitation.

2. The federation was to bind itself to make payments for the support of decedent's sister if she was living "at the time of the death of my said wife". Apart from the unlikely contingency that decedent's wife would die within the 60 days following decedent's death, this 60-day limitation is again not applicable.

3. ". . . the building so to be erected shall be free of all mortgages and ground rents and shall be paid for fully with the amount bequeathed to the Federation by me."

Whether this condition was satisfied could not be determined until the construction of the building was completed and all bills paid. Obviously this could not occur within the 60-day period, even ignoring the fact that the federation had a five-year period within which to begin construction.

The absurdity of a literal application of the 60-day limitation confirms the conclusion that the phrase "my death" does not indicate an intentional limit upon a gift. To give "my death" or the 60-day limitation a

literal application will defeat the clear intent of decedent to benefit the federation. Blind adherence to the letter of the will shall not be allowed to defeat this purpose.

Counsel for respondent contends that the gift to the charity cannot take effect because of the well-established rule of law that a gift subject to a condition precedent cannot vest if the condition is not satisfied. The cases which he cites in support of this principle are not inconsistent with the conclusion that under the facts of this case the gift to the charity has vested.

The condition precedent must be clearly expressed. In Adams v. Johnson, 227 Pa. 454, 456-57 (1910), the court stated:

"In construing a particular provision of a will, the intention of the devisor to create an estate on condition governs, but it must be manifested in express terms, or by clear implication, and it is to be gathered from the whole instrument and the existing facts. . . ."

The court noted that in the case then before it "this condition is expressed in apt words." (227 Pa. at 457.) "The language of the will and all the circumstances surrounding the parties leave no doubt that such was the intention of the testator. . . ." (227 Pa. at 458.)

In Campbell v. M'Donald, 10 Watts 179, 181 (1840) the court noted:

"It is difficult, if not impossible, to raise a doubt as to what was the intention of the testator in this case."

In discussing the validity of a condition precedent, the court stated (10 Watts 184) :

". . . yet if his [testator's] intention be expressed in clear and unambiguous terms, it must stand and be regarded as his will."

In the case now pending before this court it cannot

be stated that decedent has clearly and unambiguously established a condition precedent. Here he has specified that conditions must be met within 60 days after his death, although one of these conditions is that construction of a building be commenced within five years after his death and that the building be constructed from funds given to the charity upon the death of the wife (which may be a date later than five years after his death), and that the building must be such as will be most urgently needed at the time of the wife's death. If it is urged that these conditions are not as confused as they appear and that they should not be interpreted literally, it can be answered that no case has been found or cited to us in which a court "liberally" interpreted a will in order to write into it a "clear" condition precedent, and then, after having rewritten the will for testator, raised this condition precedent to defeat an object of the testator's bounty.

In Gunning's Estate, No. 1, 234 Pa. 139, 143 (1912), the court enforced a condition precedent, and noted:

"Then too, the fulfillment of the condition precedent was not originally impossible. . . ."

In the pending case, was it possible for the charity to construct the building with money before it received it, to commence to construct it at any time within five years, provided it was not later than 60 days after decedent's death, and, above all, to erect, before the death of the wife, a building of such nature as would be most urgently needed at her death? To require a legatee to solve such problems of financing, to make time stand still, and to engage in prophecy is not to impose a condition possible of satisfaction.

In Whitman's Estate, 329 Pa. 377, 381 (1938) the court enforced a condition precedent because "there is every indication (in the will) that the intention of the testatrix is contrary to the disposition of her estate

that would result from such an alteration of her will."

In the instant case, it is apparent that decedent had some generous intention with respect to the charity. Whether it would be contrary to his intention that the charity receive the bequest depends upon whether he has clearly expressed a condition precedent which has not been satisfied.

In Thompson's Estate, 304 Pa. 349, 352 (1931) a condition precedent was enforced because "here the primary intent was to have the business continued in the name of Thompson Brothers, with some member of his family interested therein".

There is no such factual situation present in the pending case.

Two of the remaining cases cited by counsel for respondent, Wanamaker's Estate, 312 Pa. 362 (1933), and Jordan's Estate, 310 Pa. 401 (1933), merely hold that if there is a condition precedent a charitable legatee cannot invoke the cy pres doctrine to excuse noncompliance with the condition. This issue is not presented in the pending case. Here the issue is whether decedent has established a condition precedent, and if he has, what are the terms of that condition.

For the reasons above discussed, it is held that the will of decedent does not disclose either a clear, unambiguous condition precedent that construction of the building be commenced within five years after decedent's death nor that decedent intended to impose such a condition. To the contrary, his intention is that the charity receive the bequest if construction be commenced within five years after the death of his wife.

We have no difficulty in agreeing with our colleague, the opinion judge, that there is no condition precedent with which the federation must comply or else forfeit the bequest. On the propriety of his adding the word

"wife's" to the controversial clause, there is abundant authority in the decided cases.

In Hellerman's Appeal, 115 Pa. 120, 129 (1886), decedent devised land "subject to the payment of the sum of one hundred and twenty-five dollars unto my widow . . . for and during all the term of her natural life . . .". The court inserted the words "per annum" after the amount named because it found that it was clear from the wording of other bequests that this was intended by testator. "It is a fair inference from the whole will that the words 'per annum' were omitted from said clause by mistake. It is unnecessary to repeat the reference to the authorities, made by the Master and court below, which establish the principle that a word may be supplied when it is a clear inference from the whole will that it was omitted by mistake . . .".

In March Estate, 357 Pa. 216, 218 (1947), decedent bequeathed his residuary estate in trust for the benefit of his son, and if the son should "die while any of said trust fund . . . is still in the hands of the Trustee" the fund should be paid to named remaindermen. The son died before the father. It was claimed that the gift to the remaindermen was contingent upon the life tenant's death while the trust was in the hands of the trustee, and that as the death occurred prior to such time, the bequest to the remaindermen lapsed. The court held that the gift to the remaindermen was not subject to such a condition and that they were entitled to immediate distribution of the fund although the trust had not been set up.

The court stated (pages 218-19) :

"There is not the slightest indication, upon consideration of the entire testamentary scheme, which even remotely suggests that testator intended that the gift to the remaindermen was *contingent* upon the purely fortuitous circumstances that testator should

predecease his son, that the trust should have been set up with the funds in the hands of the trustee, and that the son should die during the administration of the trust. . . ."

In the instant case it can be said with equal justification that there is not the slightest indication in decedent's testamentary plan that the gift to the charity should be subject to a condition which could be satisfied only if decedent's wife died within five years after his death.

March Estate (357 Pa. at 219) redeclares the principle that "Words or phrases will be rejected when they have the effect to subvert or defeat testator's whole testamentary scheme and divest the bounty from those whom he obviously intended to benefit . . .".

Similarly, a double condition may be converted into alternative conditions by construing "and" to mean "or" where this will carry out testator's intent.

In Hemphill's Estate, 345 Pa. 451, 453 (1942) decedent made a certain disposition of a share of his estate "in case of the death of my said son . . . *unmarried and leaving no lawful issue* . . .". The son married, and upon his death was survived by a widow but no issue. The court stated that the "testator could not have intended the gift over of (the son's) share to take effect only in the event he died unmarried, but as well in the event he died without issue surviving, whether married or not; hence that the substitution of 'or' for 'and' was proper. . . . The general rule in such cases is that the one word will be construed to have been used for the other, where the plain intent of the testator will be defeated without such substitution . . .".

For the reasons above set forth, the conclusions of the opinion judge are adopted and the exceptions thereto are dismissed.