ROBINSON FUNK *et al.*

*v.*

WILLIAM W. EGGLESTON *et al.*

1. WILLS—*whether an estate in fee passes, or only a life estate with power of disposition.* A will, after making disposition of an undivided one-third of the estate of the testator, real and personal, provided: "It is my will and desire that the remaining two-thirds of my real and personal estate, after the payment of my debts and the payment of the legacy hereinafter named, shall go to and become the property of my beloved wife during her life, with full power and authority for her to dispose of the same as she may think proper, by will or otherwise, before her death. Therefore, I give and bequeath to my said wife said two-thirds of my estate, subject to legacies, as follows:" After specifying the legacies the will continued: "And all the rest of the said two-thirds of my said estate, so given to my said wife during her lifetime, may be disposed of as she may think proper." The will then directed the disposition to be made of such portion of the property so given to the wife as might remain undisposed of by her at her death, and provided that the specific "legacies above named are to be paid over to said legatees at all events, as their respective estate, out of my wife's two-thirds above named." It was *held*, the wife of the testator did not take the lands in fee under the will, but only a life estate therein, with power of disposition by will or deed.

2. The rule is, if land be devised to a person, with general power to dispose of the same, an estate in fee simple passes. Such a power of disposition amounts to an absolute gift of the property. But if it be devised to a person for life, with power to dispose of the reversion, an estate for life only passes; and if the devisee dies without having disposed of the reversion, it goes to the heir of the devisor. The creation of the life estate controls the operation of the power, and prevents it from enlarging the estate to a fee. Nothing passes under the clause conferring the power until the power itself is exercised.

3. SAME—*of a devise subject to legacies—whether the legacies a personal charge upon the devisee, or a charge upon the estate—and herein, of this distinction as fixing the character of the estate passed by the devise.* In regard to the legacies named in the will, the language is as follows: "It is my will and desire that the remaining two-thirds of my real and personal estate, *after the payment of my debts and the payment of the legacies hereinafter named,* shall go to and become the property of my wife during her life." "I give and bequeath to my said wife *said two-thirds of my estate subject to legacies.*" "I desire that she shall give *of said estate,*" etc.; and "The $500 each, and the $2000 legacies above named, are to be paid over to said legatees at all events, as their respective estate, *out of my wife's two-thirds above named.*" It was held the will did not operate to

make the legacies a personal charge on the devisee, but they were expressly directed to be paid out of the property devised, and were made a charge thereon.

4. Where an estate is devised subject to the payment of legacies, if the legacies are made a personal charge on the devisee, an acceptance of the devise operates to make such legacies a personal charge on the devisee, and he will take the estate devised as a purchaser and in fee, but, if the legacies are charged on the estate devised, the devisee does not take as a purchaser, but as a beneficial devisee.

5. SAME—*of a devise for life with power of disposition by will—of the intention of the donee of the power to execute it.* Where there is a devise for life with power in the devisee to dispose of the property by will or deed, whether a will executed by the donee of the power will operate as an appointment under the will of the first testator must depend upon the fact whether the former intended thereby to act under the power.

6. SAME—*of the rule for ascertaining the intention of the donee of the power.* The intention of the donee to execute being the essential thing,—then as to the mode or means of ascertaining that intention: The rule to be deduced from the weight of English authorities is, that there are three classes of cases in which it is demonstrated to an absolute moral certainty there was an intention to execute the power, and these are, where there is a reference to the power, or to the subject or property covered by the power; or where the instrument would be inoperative without the aid of the power,—and that there can be no execution of a power by a testator, unless the case falls within one of these three classes.

7. But the better rule, as tending more generally to give effect to the real intention of the donee of the power, is, if he intends to execute, and the mode be in other respects unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. The intention to execute the power must be apparent and clear, so that the transaction shall not be fairly susceptible of any other interpretation,—for if it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power; —but it is not necessary that the intention to execute the power should appear by express terms or recitals in the instrument. It is enough that it shall appear by words, acts or deeds demonstrating the intention. And this is the rule adopted by this court.

8. SAME—*application of the rule to the particular case.* A testator, after having disposed of an undivided one-third of his estate, real and personal, devised the remaining two-thirds to his wife, subject to certain specific legacies, for her life, with power of absolute disposition by will or deed. After the death of the testator the donee of the power acquired title in fee to the undivided one-third of certain of the lands the other two-thirds of which she had taken under the will for life with this power of disposition. Subse-

quently to acquiring the title in fee to the one-third as mentioned, the donee of the power made her will, in which, after making several specific bequests, it was provided: "All and singular the rest, residue and remainder of my estate, real and personal, of whatever kind and wheresoever situate, I hereby order and direct to be converted into money by my executors." "And for that purpose I do authorize and empower them to bargain, sell and convey my real estate wherever situate, and to make, execute, acknowledge and perfect all deeds and conveyances in law necessary to assure in the purchaser or purchasers thereof the full title thereto, the said real estate to be sold as soon as the same can be done without sacrifice, in the discretion of said executors." "And when my said residuary estate shall be converted into money as aforesaid," etc., with directions for its distribution. It further appeared that the testatrix at the time of death was seized in fee of several parcels of real estate. Upon the question whether the donee of the power of disposition given her by the will of her husband intended by her general devise of all her real estate to execute the power, and as tending to show her intention in that regard, it was *held,* that by any construction the undivided one-third of which she held the fee would pass, and, having the right of enjoyment during life of the other two-thirds, and the absolute power of disposing of it, that also was hers, and under the devise of "all her real estate" might well be considered as also intended to be included. The words "all my estate, real and personal," as used in the will, are not to be regarded as descriptive of the interest of the testatrix in the estate, but of the estate, and as indicating an intent to pass all the property which she had any right to dispose of. This fact of co-existing undivided interests, one within and the other without the power, is, however, but one element in the proof of intention, but a circumstance of great weight.

9. Just preceding the disposition of her real estate the testatrix bequeathed "my gold watch" to one person, and "all my household furniture" to another. These articles came to the testatrix under the will of her husband, and she had no authority to bequeath them, except in execution of the power given her by that will. A gift of that which a testator can not dispose of except in execution of a power, necessarily manifests an intention to execute that power. Then following these bequests with a devise in the same character of phraseology—"my real estate"—would seem to afford strong evidence the testatrix intended her will to work not only by the interest, but by the power. A will may well operate both as an appointment under a power and as a conveyance of an interest.

10. While it may be that a reference to part of the subject, or to some of many subjects of the power, will not be sufficient, of itself, to make a will operate as an execution of the power, yet the specific bequests of those articles which could be given only in execution of the power to that extent, would, in connection with other facts, afford cumulative evidence, derived

from the face of the will itself, of the intent to execute the power as to the whole estate.

11. When the subject of the power is real estate, and the question is as to the execution of the power by the devise, the condition of the property may be considered, and the facts *dehors* the will, to arrive at the intention of the testator. So here, in addition to the evidence in regard to the watch and the furniture, were other facts to be considered. The subject of controversy in this suit was only thirty feet of ground. The testatrix held title to an undivided one-third of it in fee, and the other two-thirds for life with power of disposition. She had already, before devising the land, made specific bequests which she could not make except in execution of the power, thereby evincing a knowledge of her titles, and an intention to execute the power to that extent at least. If the two-thirds interest did not pass by the devise it would go to the heirs of her husband—two hundred and twenty-two in number—who would be *tenants in common with the owner of the other one-third of this* small piece of ground. It might well be considered, as tending to show the intent of the testatrix, whether she would be likely to leave the title to the premises in so absurd a condition, especially as the will directed the property to be sold in a manner to avoid sacrifice.

12. So, under the fundamental and more reasonable rule, that the intention of the donee of a power, however manifested, shall control, it was *held*, the provisions of the whole will of the testatrix taken together, and the facts *dehors* the will, indicate an intention to pass the whole estate, and the devise should, in favor of the intention, be held to work both by the interest and by the power, and to pass the entirety.

13. WITNESSES—*competency—persons interested, as against those suing as heirs or devisees.* Under the first exception to the second section of chap. 51 Rev. Stat. 1874, 488, entitled "Evidence and Depositions," a person directly interested in the event of a suit may testify therein in his own behalf, and adversely to the plaintiff, who sues as the heir and devisee of a deceased person, concerning facts occurring after the death of such deceased person.

14. So, in ejectment, where the plaintiff sued as the heir and devisee of a deceased person, it appeared that by the will of such deceased person a certain portion of his estate, real and personal, was devised and bequeathed to his wife during her life, with power of disposition, by will or otherwise. The wife made a will, and died. The defence rested upon the question whether the will as made by the wife was a proper execution of the power of disposition given her by the will of her husband, and as bearing upon that question,— as tending to show the intention of the wife in that regard in the making of her will, it was held that a legatee under the will of the wife was a competent witness in behalf of the defence to prove facts occurring after the death of the testator giving the power, as, that the testatrix never had certain of the articles of personal property which were bequeathed by her will, except such as she took under the will of her husband.

15. SAME—*husband testifying for his wife.* In the same state of case, the husband.of one of the devisees under the will of the testatrix was held to be a competent witness in behalf of the defence, in support of the interest of his wife. A husband is a competent witness for or against his wife "in cases where the litigation shall be concerning the separate property of the wife."

APPEAL from the Circuit Court of Cook county; the Hon. W. K. MCALLISTER, Judge, presiding.

This was an action of ejectment, brought by appellants, to recover an undivided part of the south thirty feet of lot 6, in block 2, fractional section 15, addition to Chicago, the property being situated on the east side of State street, between Madison and Monroe, in the city of Chicago. There were several counts in the declaration, in some of which the plaintiffs joined and claimed their joint interest, and in others of which they severed and each claimed his several interest. On the trial below by the court, without the intervention of a jury, the court gave judgment for the defendants, and the plaintiffs appealed.

The facts shown by the record are these: One Absalom Funk died seized in fee of the whole thirty feet, of which the plaintiffs, part of his heirs, claim an undivided part. Said Funk made a will, as follows:

"In the name of God, amen: I, Absalom Funk, of the city of Chicago, and State of Illinois, being of sound mind and memory, do make this my last will and testament, hereby revoking all other and former wills by me made:

"1. For and in consideration of the natural love and affection which I bear toward my natural daughter, Nancy Staley, wife of Israel Staley, of county of Montgomery, in the State of Ohio, near Miamisburg, I hereby give and bequeath to her and her heirs forever one third of all the real estate I may own at the time of my death, should she survive me, and if she should not survive me, then the same to go to her children in equal parts thereof. It is my will also that my said daughter, if she shall survive me, (or her children, should she not be living,) shall have one-third of all my personal estate, goods, chattels, moneys and effects after my debts are paid.

"2.  It is my will and desire that the remaining two-thirds of my real and personal estate, after the payment of my debts and the payment of the legacy hereinafter named, shall go to and become the property of my beloved wife during her life, with full power and authority for her to dispose of the same as she may think proper, by will or otherwise, before her death. Therefore, I give and bequeath to my said wife, Sarah Funk, said two-thirds of my estate, subject to legacies as follows:  I desire that she shall give of said estate at least $500 apiece to each of her three daughters, Harriet, Sarah and Julia Ann, whenever she shall think proper so to do.  Also, to give to her granddaughter, Mary Ann Clarkson Funk, the sum of $2000 in property and money for her education and for her support; and all the rest of the said two-thirds of my said estate, so given to my said wife during her lifetime, may be disposed of as she may think proper, but I do request if said Mary Ann Clarkson Funk shall be living at the time, may have the whole of my estate which my said wife may not have disposed of; and should she not do so, it is my wish at her death that her said granddaughter may have the whole of my estate undisposed, to her and her heirs forever.  But, if my said wife shall survive her said granddaughter, then at her death I desire my brothers and sisters and their descendants shall have whatever remains of my estate not disposed by my said wife, in equal parts thereof.

"The $500 each and the $2000 legacies, above named, are to be paid over to said legatees at all events as their respective estate, out of my wife's two-thirds above named.

"I hereby nominate and appoint my beloved wife, Sarah Funk, my executrix of this my last will and testament, and request that she shall not be required to give security for administration thereof, but may give her own bond therefor.

"In witness whereof, I hereunto subscribe my name and affix my seal this third day of May, A. D. 1849.

ABSALOM FUNK, (Seal)"

The record shows that said Funk died in September, A. D. 1851; that he left no legitimate children nor descendants of children, nor parents surviving, but that his heirs are his brothers and sisters and their descendants, numbering two hundred and twenty-two at the date of the death of Sarah Funk,—the plaintiffs in this case being a part of said heirs; that Mary Ann Clarkson Funk died before her grandmother, Sarah Funk, and left no children nor descendants of children; that Sarah Funk, the widow of said Absalom, died May 21, A. D. 1866, and left the following will:

"In the name of God, amen: I, Sarah Funk, of Blue Island, Cook county, and State of Illinois, widow of Absalom Funk, late of said Cook county, deceased, being of sound mind, memory and understanding, do make and ordain this my last will and testament, in manner following, viz:

"*Imprimis:* I order and direct my executors, hereinafter named, to pay all my just debts and funeral expenses, including the expenses of erecting a monument corresponding with my estate and situation in life."

After specific bequests of $500 to the directors and managers of the Old Ladies' Home, of Chicago; $250 to the directors and managers of the Protestant Orphan Asylum; $250 to the managers and directors of the Home of the Friendless; to the testatrix's brothers, John and Moses Carr, $200 each; to her niece, Elizabeth Roth, $500; and to her sister, Elizabeth Blain, $200, in case said relatives should survive her; to her nephew, Absalom Funk, her gold watch; to her daughter Sarah Roche, $1000; to her daughter Harriet Albee, $1000; to her executors, in trust for her grandson, John Lopp, $500; all her wardrobe, wearing apparel and household goods to her daughters, Sarah Roche, Harriet Albee, and granddaughter Sarah E. Davis, and

" 14th.   All and singular the rest, residue and remainder of my estate, real and personal, of whatever kind and wheresoever situate, I hereby order and direct to be converted into money by my executors hereinafter named, and for that purpose I

do authorize and empower them to bargain, sell and convey my real estate wherever situate, and to make, execute, acknowledge and perfect all deeds and conveyances in law necessary to assure in the purchaser or purchasers thereof the full title thereto, the said real estate to be sold as soon as the same can be done without sacrifice, in the discretion of said executors.

"And when my said residuary estate shall be converted into money as aforesaid, I do hereby will, order and direct the same shall be divided by my executors hereinafter named, into three equal parts and shares, and disposed of as follows, that is to say:

" 1.   One full equal third part and share whereof I give, devise and bequeath unto my said daughter Sarah Roche, to have and to hold to her and to her sole and separate use and to her heirs and assigns forever.

" 2.   One other full equal third part and share of said residuary estate I give, devise and bequeath unto my said daughter Harriet Albee, to have and to hold to her and to her sole and separate use and to her heirs and assigns forever.

" 3.   The remaining one full equal third part and share of my residuary estate I give, devise and bequeath unto my said executors hereinafter named, in trust for my grandchildren, viz: George E. Lopp, John Lopp and Sarah E. Davis, (who are the children of my deceased daughter, Julia Lopp,) in equal parts, share and share alike, to be paid to them respectively, with all accumulations of interest thereon, when they shall severally attain the age of twenty-one years, to have and to hold unto them, the said George E. Lopp, John Lopp and Sarah E. Davis, to their sole and separate use and to their heirs and assigns forever, respectively; but should my executors, in their discretion, deem it necessary so to do, they may advance any part of the interest accumulated on any share of said grand child, toward the education and maintenance of said grand child to whom such share belongs, during his or her minority."

15th.   Appoints her sons-in-law, Walter P. Roche and

Cyrus P. Albee aforesaid, executors, without bond, and revokes all previous wills.

The will is dated October 4, 1865.

An inventory of her estate made by her executors was given in evidence, showing a considerable amount of money on hand, and personal property. It was also in evidence that she died seized in fee of several parcels of real estate. The other facts sufficiently appear in the opinion of the court.

Messrs. WILLIAMS, BURR & CAPEN, for the appellants:

1. A power of sale or other disposition attached to a life estate will not enlarge it into a fee. We regard this point as settled by this court. *Fairman* v. *Beal,* 14 Ill. 244; *Boyd* v. *Strahan,* 36 id. 355.

These cases are in strict harmony with the text-books and decisions of other courts, both English and American. 4 Kent, 319–336; 6 Greenleaf's Cruise on Real Property, 256, (or ed. 1849, vol. 3, 316;) 1 Hilliard Real Property, 622; *Dean* v. *Nunnally,* 36 Miss. 358; *Andrews* v. *Brumfield,* 32 id. 107, (115); *Rail* v. *Dotson,* 14 S. & M. 176, (184); *Jackson* v. *Robbins,* 16 Johns. 537, (587); *Barford* v. *Street,* 16 Vesey, 135; *Reith* v. *Seymour,* 4 Russell, 263; *Smith* v. *Bell,* 6 Peters, 68; *Collins* v. *Carlisle,* 7 B. Mon. 13; *Carroll* v. *Carroll,* 12 id. 637; *Edmondson* v. *Dyson,* 2 Kelly, 307; 1 Sugden on Powers, 120.

2. If legacies are made a personal charge on the devisee, an acceptance of the devise makes such legacies a personal charge on the devisee and he will take the estate devised as a purchaser. But, if the legacies are chargeable on the estate devised, the devisee does not take as a purchaser, but as a beneficial devisee. 1 Hilliard Real Property, (3d ed.) 630, § 43, and cases there cited.

3. Sarah Funk, by the will of her husband, Absalom Funk, took a life estate with power of disposition by deed or will. The language used in the will, in the second clause, is: "shall go to and become the property of my beloved wife during her natural life." These are the most proper words that could be used to create a life estate.

Again, in the same clause he says: "All the rest of the said two-thirds of my estate so given to my said wife during her lifetime." This language leaves no doubt of the intention of the testator to create a life estate.

The legacies are not made a personal charge on the devisee, but are expressly made a charge on the estate devised. The language of the will on this is as follows: "It is my will and desire that the remaining two-thirds of my real and personal estate after the payment of my debts and the payment of the legacies hereinafter named, shall all go to and become the property of my beloved wife during her life." And in the concluding part of the devise he says: "The $500 and the $2000 legacies above named, are to be paid over to said legatees at all events as their respective estate, out of my wife's two-thirds above named."

We conclude from the above that Sarah Funk took simply a life estate with power of disposition by deed or will. This is manifest. It only remains to inquire does the will of Sarah Funk execute the power vested in her by the will of her husband?

4. A will is not an execution of a power by the testator, unless, *First*, the will describes the property on which the power rests; or, *Second*, refers to the power; or, *Third*, would be inoperative without acting on the property over which the testator had the power. 4 Kent, 334, and note to 335 and cases cited; 1 Jarman on Wills, side page 628; 2 Hilliard on Real Property, (3d ed.) 597, § 47; 2 Greenleaf's Cruise on Real Property, side page 198; 2 Washburn Real Property, 319, 612; *Nowell* v. *Roake*, 6 Bing. 475; *Caldecott* v. *Johnson*, 7 M. & G. 1047; *Mory, Exr.* v. *Michael*, 18 Md. 227; note 5, to *Blake* v. *Bunbury*, 1 Ves. 194; note 3, to *Bull* v. *Nordy*, id. 272; *Smith* v. *Bell*, 6 Pet. 68; *Bradish* v. *Gibbs*, 3 Johns. Chy. 523; *Bradley* v. *Westcott*, 13 Ves. 445; *Roach* v. *Haynes*, 8 id. 584; *Lovell* v. *Knight*, 3 Sim. 275; *Lempriere* v. *Valpy*, 5 id. 107; *Blagge* v. *Miles*, 1 Story, 426; *Coffing* v. *Taylor*, 16 Ill. 452 (474).

Independently of the authorities above cited, we regard it as the well settled law of this court, in harmony with all the authorities, that where a party has an interest and a power, and makes a conveyance, it will be held to operate on his interest only, unless the conveyance describes the power and shows upon its face that it was executed under it. *Coffing* v. *Taylor*, 16 Ill. 457; *Davenport* v. *Young*, id. 548. We think this court has fully recognized the general doctrine for which we contend, that the will or other conveyance, to be a good execution of a power, must either refer to the power, describe the property over which the power exists, or would be otherwise inoperative.

In *Wimberly* v. *Hurst*, 33 Ill. 173, this court uses the following language: "Where a conveyance is general, but by an instrument not adapted for the purpose of conveying a particular interest, or as an execution of a power, it will be held to convey whatever interest the grantor had, or as an execution of the power vested in him, if it would otherwise be totally inoperative, although his interest or character is not referred to expressly or by implication. 1 Sugden on Powers, 418."

It was attempted to prove on the trial below that the watch spoken of in the will of Sarah Funk was the property of her husband, with a view, as we suppose, to show that as to the watch, the will was an execution of the power. We objected to the competency of the witness; our objection was overruled, to which we then and there excepted. We insist that neither of the witnesses called to testify on that subject is competent.

They are manifestly not competent at common law, being parties and directly interested. Nor do they come within the provisions of the statute. Plaintiffs claim either as heirs or devisees of Absalom Funk. In such case neither of these witnesses is competent. See § 2, p. 488, Rev. Stat. 1874; *Merrill* v. *Atkin*, 59 Ill. 19.

Messrs. TULEY, STILES & LEWIS, for the appellees:

We will address ourselves chiefly to the question: Did the will of Sarah Funk operate upon the land in question, and thereby pass the same to the devisees under that will;—or, as plaintiff puts it: "Is the will of Sarah Funk an execution of the power vested in her by the will of her husband?"

The correct rule in such case is, if the instrument be executed in conformity with the requirements of the power, the only purpose of inquiry is, what was the *intention* of the testator?

We have no doubt that Sarah Funk did intend, by her will, to execute the power. Then, as to the rule by which that intention shall be ascertained:

As to the class of cases in which the rules as to the construction of instruments affecting the execution of powers, towit, that the instrument must refer to the power, describe the property, or be inoperative unless acting on the property subject to the power, have been held, in the construction of wills, to be subordinate to the question, what was the intention of the testator.

An examination of the authorities cited by appellants will show that this is the doctrine of all the principal authorities cited on their behalf. To this effect are the following cases cited: *Caldecott* v. *Johnson*, 7 Man. & G. 1047; note to *Blake* v. *Bunbury*, 1 Vesey, Jr. 194; *Roach* v. *Haynes*, 8 id. 584; *Bradley* v. *Westcott*, 13 id. 445; *Attorney General* v. *Vigor*, 8 id. 256; *Bennet* v. *Aburrow*, id. 609; *Madison* v. *Andrews*, 1 Vesey, Sr. 57; *Bailey* v. *Lloyd*, 5 Russ. 530, 541.

The case of *Caldecott* v. *Johnson*, 7 Man. & G. 1056, is much relied upon by appellant to sustain his position, but an examination of that case will show that it turned upon the *intent* to execute the power.

The note to *Blake* v. *Bunbury*, 1 Vesey, 194, cited by appellants, is to the effect that it is not necessary, in order to execute a power by will, to recite the power therein. The object may be effected by a reference to the subject of the power, or

generally to all powers vested in the testator, citing in support thereof, *Hales* v. *Margerum*, 3 Vesey, Jr. 299; *Roach* v. *Haynes*, 8 Vesey, 584, and *Bradley* v. *Westcott*, 13 id. 444. The note also cited *Lewis* v. *Llewellen*, Turn. 106, and *Standen* v. *Standen*, 2 Vesey, Jr. 594, as laying down the doctrine that if the words of a will can not be satisfied unless by allowing them to operate as an execution of the power, they may be so construed.

The note states the further doctrine that an inquiry may be directed to ascertain whether the testator has left any real estate except that over which he had a power, and if devise would be held inoperative except as an execution of the power, such construction will be made, and that " as it seems it may, although the will contain no sort of reference to the power, and at the same time there are subjects upon which the will might operate without presuming an intent to execute the power, but still the intent to execute is manifested to the satisfaction of the court," (*Doe* v. *Roake*, 2 Bligh, 512,) but that this principle as to inquiry into the state of the testator's property is not extended to a pecuniary disposition, citing *Jones* v. *Curry*, 1 Swanston, 77, and other authorities. It is clear from this note that the real question for the court is whether the intent to execute the power is manifest from the will and the surrounding circumstances.

The case of *Roach* v. *Haynes*, 8 Vesey, 584, cited by appellants, does not sustain their position, but shows that the case turned upon the intention of the testator.

The note to that case has the following: "A mere general devise, however unlimited in terms, will not comprehend the subject of a power unless it refer to the subject, or to the power itself, or generally to any power vested in the testator, or unless some part of the will would otherwise be inoperative. Citing Sugden on Powers, 278, 287; Wigram on Interpretation of Wills, p. 43, p. 18.

In *Bradley* v. *Westcott*, 13 Vesey, 445, it is held the words " all my personal estate," " all my estate and interest therein,"

is not an execution of a power of appointment. "Her will does not contain a word with any operation that the mere appointment of an executor would not have had. The executor would have taken all her personal estate," etc.

In *Madison* v. *Andrews*, 1 Vesey, Sr. 58, it was held there was no occasion for the testator referring to the power, if he does it in substance.

In the case of *Attorney General* v. *Vigor*, in 8 Vesey, 256, the decision is put upon the ground that the testator, in some parts of his will, expressly adverted to his authority by virtue of certain express powers in a marriage settlement, and thereby manifested an intention not to exercise certain implied powers.

In *Bennet* v. *Aburrow*, 8 Vesey, 609, the Master of the Rolls, Sir WILLIAM GRANT, says : "This is always a question of intention whether the party meant to execute the power or not. Formerly it was sometimes required that there should be an express reference to the power. But this is not necessary now. The intention may be collected from other circumstances, as * * * that a part of the will would be wholly inoperative unless applied to the power."

In the case of *Bailey* v. *Lloyd*, 5 Russ. 531, the court held that the question of the execution of a power by a will was a mere question of intention, and that the intention was to be collected not from a particular expression, but from the whole will.

These cases show conclusively that the great weight of English authority is that these rules of construction are not to be arbitrarily enforced, but must give way to the intention of the testator.

The following English authorities sustain the position, that a general devise by a person of "all his estate" will operate to convey property in possession in which the testator had a life estate with absolute power of disposition, as "by deed, will or otherwise : "

The leading English case upon this point is that of *Standen* v. *Standen*, 2 Vesey, Jr. 589, decided by Chancellor LOUGH-

BOROUGH. See 6 Bro. P. C. 193; *Hales* v. *Margerum*, 3 Vesey, Jr. 298; *Hurst* v. *Earl of Winchester*, 2 Burr. 880.

In *Churchill* v. *Dibben*, the facts were quite like those in the present case. The donee of the power had freehold and leasehold estates purchased with her own savings, in addition to those included in the power. She died, leaving a will, and the residuary clause was "all the rest of my goods, chattels, estates and estate whatsoever, undisposed of, I give and bequeath unto my kinsman, R. C., his heirs, executors and assigns forever." The court held the estate, over which she had the power, did pass by the will, "for the estate was hers," and says she does not dispose by virtue of her ownership, but the word "my" perfects the description, as they were in fact her lands. The pronoun "my" was held to identify these estates, and it was held that she intended to dispose of the property comprised in the settlement—in other words, to identify the power. Sugden, vol. 1, p. 390. See, also, to same effect, *Dillon* v. *Dillon*, 1 Ball & Beattie; *Morgan* v. *Surman*, 1 Term, 287.

There are a number of English cases which have followed the rules of construction deduced from the *case of Sir Edward Clere*, 6 Coke Reports, 17, without regard to the intent of the testator.

These are the rules contended for by appellant, to-wit: That a will is not an execution of a power, unless the will describes the property, or refers to the power, or would be inoperative without acting on the property over which the testator had the power.

Many of the Chancellors of England have followed the rules of construction which they have deduced from *Sir Edward Clere's case*, but they have done so with great reluctance; so much so, indeed, that it can not be said to have ever been the settled rules of construction of wills—even in England. Among the leading cases which have followed these rules of construction, and in so doing have, in many of them, done violence to the intent of the testator, are the following:

*Exparte Caswell,* 1 Alk. 547; *Langham* v. *Renny,* 3 Vesey, Jr. 467; *Nannock* v. *Horton,* 7 id. 391; *Jones* v. *Currie,* 1 Swanst. 66; *Jones* v. *Tucker,* 2 Meri. 533; *Hughes* v. *Turner,* 3 Myl. & R. 666, and *Newell* v. *Roake,* 6 Bing. 475.

But the doctrine as laid down in *Newell* v. *Roake,* 6 Bing., and kindred cases, has not been followed in this country. The weight of American authority establishes this rule:— that a general devise of all a testator's estate will operate as an execution of a power over property of which he had the beneficial use for life as well as the power of disposal, unless a contrary intent appears in the will.

*Morey, exr.* v. *Michael,* 18 Md. 227, arose upon an antenuptial contract, and appears to adopt the rule of construction laid down in 6 Bingham. It does not appear to be a well-considered case.

Chancellor Kent says "that in construing an instrument in cases where the party has a power, and also an interest, *the intention is the great object of inquiry,*" (4 Kent's Com. § 335,) and that the power may be executed without reciting or even referring to it, provided the act shows that the donee had in view the subject of the power. Id. § 334.

Redfield lays down the rule broadly: "A will bequeathing all the estate, real and personal, of the testator, will operate upon lands and personalty embraced in a testamentary power, although the power be not named or referred to." 1 Redf. on Wills, p. 271, § 32. See also, 2 Washb. Real Prop. 612, § 320.

The rule contended for by appellees is laid down in these four leading cases: *White* v. *Hicks,* 33 N. Y. 383; *Blagge* v. *Miles,* 1 Story, 427; *Amory* v. *Meredith,* 7 Allen, 397; *Andrews* v. *Blumfield,* 32 Miss. 108. See also, *Bower* v. *Dean,* 110 Mass. 438.

Mr. WILLIAM HOPKINS, also for the appellees:

1. The words of the devise to Sarah Funk gave to her, in fee simple, the real estate devised to her, the meaning and

effect thereof being unrestrained by other parts of the will.' *Jackson* v. *Robbins,* 16 Johns. 587; *Countess of Bridgewater* v. *Duke of Bolton,* 1 Salk. 236; *Barry* v. *Edgeworth,* P. Wms. 524; *Roe* v. *Harvey,* 5 Burr. 2639; *Holdfast* v. *Marten,* 1 Term, 414; *Lambert's Lessees* v. *Paine,* 3 Cranch, 134; *Kellogg* v. *Blair,* 6 Metc. 325; *Leland* v. *Adams,* 9 Gray, 171; Kent's Com. 4, *537.

2. The power of disposal given to Sarah Funk by the will enlarged the devise to her into a fee. *Attorney General* v. *Hall,* Fitzg. 314; *Ide* v. *Ide,* 5 Mass. 500; *Jackson* v. *Bull,* 10 Johns. 19; *Jackson* v. *Robbins,* 16 id. 537–570; *Helmer* v. *Shoemaker,* 22 Wend. 137; *Bowen* v. *Dean,* 110 Mass. 438; *Kimball* v. *Sullivan,* 113 id. 345; *Goodtitle* v. *Otway,* 2 Wils. 6; *Jenner and Hardie's case,* 1 Leonard, 283.

3. The legacies of the will being charged upon the devisee Sarah Funk, she took the fee in the land devised to her. *Baddely* v. *Leppingwell,* 3 Burr. 1533; *Doe d. Stevens* v. *Snelling,* 5 East, 99; *Wright* v. *Denn,* 10 Wheaton, Op. of Story, J. 225–7; *Goodright d. Baker* v. *Stocker,* 5 Term R. 13; *Goodtitle* v. *Maddern,* 4 East R. 496; *Collier's case,* Coke R. 6, 16*a*; *Frogmorton* v. *Holyday,* 3 Burr. 1618; *Reeves* v. *Gower,* 11 Mod. 208; *King* v. *Cole,* 6 R. I. 584; *Jackson* v. *Merrill,* 6 Johns. 185 and 192; *Doe* v. *Holmes,* 8 Term R. 1.

4. The legacies being made payable out of the estate devised to Sarah Funk, she, for that reason, took the fee therein. *Doe* v. *Richards,* 3 Term R. 356; *Doe d. Stevens* v. *Snelling,* 5 East, 87; *Matthews* v. *Windross,* 2 Kay and Johnson, 406; *Doe d. Thorn* v. *Phillips,* 3 Barn. and Ad. 760.

Mr. Justice Baker* delivered the opinion of the Court:

It was admitted on the trial, the appellees were in possession of the premises in controversy at the time of the institu-

*This opinion was filed at the January Term, 1879.

tion of the suit, as tenants of the executors of the last will and testament of Sarah Funk, deceased.

Mrs. Harriet Albee was examined as a witness on behalf of appellees. It was objected that she was not a competent witness, as she was directly interested in the event of the litigation and appellants were suing as the heirs and devisees of Absalom Funk, deceased. The substantial facts to which she testified were, that Sarah .Funk never had any gold watch except one, which she got as a part of the estate of Absalom Funk; that after the death of Sarah Funk, that watch was sent to Absalom Funk, Jr., and he got it; and that she knew what furniture Sarah Funk had at the time of her death, and that she added a few things to the furniture that was in the house at the time of Absalom's death.

When adverse parties sue as heirs or devisees of any deceased person, then parties to such suit, or persons directly interested in the event thereof, are excluded by the statute as witnesses in their own behalf, except in a very limited number of cases. In this case Mrs. Albee was a competent witness to testify to facts occurring after the death of Absalom Funk. Rev. Stat. 1874, chap. 51, sec. 2, first exception. She was examined only as to such facts, and there was no error in the ruling of the court in that behalf.

Appellees also called as a witness Walter P. Roche, whose competency was objected to on the ground he was the husband of Sarah Roche, daughter of Sarah Funk, deceased. This objection was overruled and an exception taken. A husband is a competent witness for or against his wife "in cases where the litigation shall be concerning the separate property of the wife." Rev. Stat. 1874, chap. 51, sec. 5. The court properly overruled the objection made.

It is the settled rule, that, in construing a will, the intention of the testator must prevail, and the whole will should be taken together, in order to ascertain that intention. Such intention, when ascertained, is the controlling element, and the technical meaning of the words used must give way thereto.

Tested by this rule, we think it easily determined that, by the will of Absalom Funk, his wife, Sarah Funk, took a life estate with power of disposition by deed or will. With this view of the case, we deem it unnecessary to critically examine many of the points made in the elaborate and learned argument made on behalf of appellees on this branch of the present controversy.

In *Fairman* v. *Beal,* 14 Ill. 244, this court said: "If land be devised to a person, with general power to dispose of the same, an estate in fee simple passes. Such a power of disposition amounts to an absolute gift of the property. But if it be devised to a person for life, with power to dispose of the reversion, an estate for life only passes; and if the devisee dies without disposing of the reversion, it goes to the heir of the devisor. The creation of the life estate controls the operation of the power, and prevents it from enlarging the estate to a fee. Nothing passes under the clause conferring the power until the power itself is exercised."

The language used by Mr. Funk in the second clause of his will, is: "The remaining two-thirds of my real and personal estate    *    *    *    shall go to and become the property of my beloved wife *during her life;*" and again, in the same clause, the language is: "All the rest of the said two-thirds of my estate so given to my said wife *during her lifetime.*"

It was the evident intention to give the wife an estate for life in the property, with power to dispose of the same, by will or otherwise, before her death. The construction contended for by appellees would render inoperative the expressions, "during her life," and "during her lifetime," and destroy the intention of the testator to give a life estate only, which we think is plainly apparent from a consideration of all the provisions of the will taken together.

In regard to the legacies, the language of the will is as follows: "It is my will and desire that the remaining two-thirds of my real and personal estate, *after the payment of my debts and the payment of the legacies hereinafter named,* shall go to

and become the property of my beloved wife during her life." "I give and bequeath to my said wife, Sarah Funk, *said two-thirds of my estate subject to legacies.*" "I desire that she shall give *of said estate;*" and, "The $500 each, and the $2000 legacies, above named, are to be paid over to said legatees at all events, as their respective estate, *out of my wife's two-thirds above named.*"

We understand the rule to be that, if the legacies are made a personal charge on the devisee, an acceptance of the devise imposes a personal liability on the devisee, and she will take the estate devised as a purchaser and in fee; but, if the legacies are charged on the estate devised, the devisee does not take as a purchaser, but as a beneficial devisee. We think the legacies in this will are not made a personal charge on Sarah Funk, but that they are expressly directed to be paid out of the property devised, and are made a charge thereon.

The important question, however, in this record, is whether the general devise in the will of Sarah Funk was a good appointment under the power donated by the prior will of Absalom Funk.

Sir Edward Sugden, in his work on Powers, after reviewing the cases in which was involved the matter of the execution of a power by the donee, remarks: "It is impossible not to be struck with the number of instances where the intention has been defeated by the rule distinguishing power from property. The mischief has been increased by the courts, in some recent instances, adopting a strict construction, with a view to establish a certain rule. The particular disposition, when the power or the subject is not clearly referred to, must always raise a question of construction. Now, without breaking in upon the general rule, but, on the contrary, giving to it its full force, the intention in many of the decided cases might have been effectuated."

In *Jones* v. *Tucker*, 2 Mer. 533, Sir WILLIAM GRANT, in announcing the decision of the court, said: "In my own private opinion, I think the intention was to give the £100 which the

testatrix had a power to dispose of, but I do not conceive that I can judicially declare it to have been executed."

In *Nannock* v. *Horton,* 7 Vesey, Jr. 398, Lord Chancellor Eldon said: "I am not sure the rule does not oblige the court to act against what probably might have been the intention nine times in ten."

In *Davies* v. *Thorne,* 2 DeGex & Sm. 347, Sir J. L. Knight Bruce, Vice Chancellor, remarked, in giving judgment: "I must, although almost ashamed to say it, decide against what I firmly and sincerely believe to have been the intention of the testatrix, that the power of appointment has not been exercised. I am bound, however, by the authorities. I can not help myself, and I must so decide."

Criticisms upon this particular branch of the law equally severe, and emanating from judges and jurists of equal eminence, might be greatly multiplied; but they have, perhaps, no effect, unless it be to impress upon the mind that some rule has been pressed beyond its legitimate domain by at least some of the adjudicated cases.

The fundamental principle deducible from all the cases, from *Sir Edward Clere's case,* in 6 Coke, 17, down, is that there should be a certain ascertainment of the intention of the donee of the power to act under the power. Three classes of cases arose in which it was demonstrated to an absolute moral certainty there was an intention to execute the power, and these were where there was a reference to the power, or to the subject or property covered by the power, or where the instrument would be inoperative without the aid of the power. The cases ranging themselves in one or another of these three classes, it was judicially announced in some of the cases that there could be no execution of a power by a testator, unless the case fell in one of these three classes. This has been questioned by some judges, but the weight at least of English authority is that way. At all events, the rule which requires the existence of one of these three elements, in order to effect an execution of the power, is altogether subordinate

and secondary in its character, and if circumstances could and should arise that indicated clearly the intention of the donee to work by the power, it could not be but that the artificial rule, predicated upon former experience, must give way, and the primary and fundamental rule, which requires only that the intention be made clear and manifest, would prevail.

It is evident the one rule is based upon principle, and is substantial, while the other is artificial and based upon past experiences, and it is at least within the range of possibility that future experience may develop exigencies that the past has not, and demand a recurrence to the fundamental rule. Not only so, but we are strongly impressed that these exigencies, which are possible in the future, have, to some considerable extent, occurred in the past, and have afforded occasions for criticism such as we have quoted, and for nice and subtle distinctions, and for refined reasoning, in order to effectuate the intention of the donee of the power, and at the same time on some theory, plausible if not substantial, bring the case within one or another of the three classes referred to.

In *Maddison* v. *Andrews*, 1 Vesey, Sr. 58, the deed reserved a power to charge, limit or appoint, and in the will the word "charge" was used, and Lord HARDWICKE considered the use of a term in the power as a reference to the power. The testator, by his will, charged all his real and personal estate with his debts and legacies, and it does seem to us that to refer the words "my estate" to the property under the power, is going beyond even a liberal construction of the rule said to be deduced from *Clere's case*, and that the turn made upon the word "charge" is hardly substantial. So, also, the same eminent judge, in *Churchill* v. *Dibbin*, cited by Sugden, held both the freeholds and the leaseholds covered by the power to pass by the residuary gift, and this notwithstanding the fact the testatrix had purchased other leaseholds with her savings, which other leaseholds were also held to pass. It would seem difficult to harmonize this decision with the illiberal rule contended

for.   It would be equally difficult to bring *Walker* v. *Mackie,* 4 Russell, 77, within such rule.

In the celebrated case of *Standen* v. *Standen,* 2 Vesey, Jr. 589, which was afterwards affirmed in the House of Lords, the gift was generally of the residue of the testatrix's real and personal estate.   The gift was held valid as to the real estate, because she had no real estate of her own; but this did not apply to the personal estate within the power, and it was equally held to pass.   The ground of this decision was, that the fact of the testatrix not having real estate, gave to her disposition the character of an execution of the power over the real estate; it showed her *intention* to execute her power, and that when she talked of her real estate, she meant the real estate in the power; and the same intention was held to govern *the entire gift.*   And yet, the power was not referred to in this will, the personal estate under the power was not in any manner specified, and it does not appear but that the testatrix had other personal estate out of the power.   It is going a long way to say that, where the extrinsic evidence introduced the fact that she was dealing with real estate in the power, that fact supplied, as to the personal property under the power, one of the three elements supposed to be necessary to work its transfer.

We might readily multiply instances where the reasoning of the courts has been equally far-fetched in order to bring cases, where the real intent of the testator was clear and manifest, within the pale of the secondary and technical rule spoken of above.   And such cases indicate the straits to which judges have been driven to effectuate that which they were satisfied was the real intention of the testator.   In the vast diversity of human affairs and conduct it is useless, vain and unsound to attempt to limit the modes by which human intention may be manifested.

It is the established doctrine, in the interpretation of wills, the intention is the polestar to direct the court.   In *Boyd* v. *Strahan,* 36 Ill. 358, this court said: "The familiar rule

which controls all others in the interpretation of wills, is, that the intention of the testator to be gathered from the entire will must govern. There is no other class of instruments known to the law in which so little importance is to be attached to the technical sense of language, in comparison with that sense in which the apparent object of the writer indicates his words to have been used." It seems anomalous, then, that, in the interpretation of a will, the court should require a degree of proof that amounts to an absolute moral demonstration of the intention of the testator, before it will regard his wishes; that even that degree of proof which will justify a conviction for a capital crime, will be insufficient.

In *Scrope's case*, 10 Co. 144, Lord COKE says, " *Quia non refert an quis intentionem suam declaret verbis, an rebus ipsis, vel factis.*" And Chief Justice BEST says, in *Nowell* v. *Roake, infra,* " The rule given by Lord COKE is larger than that which has been deduced from the decision in *Clere's case.* Lord COKE's rule will be complied with, if the intention to execute a power be *unequivocally manifested* by any circumstances occurring in the case, or any act of the owner of the power, without requiring any specified overt acts of such intention."

In the case of *Blagge* v. *Miles*, 1 Story, 427, Mr. Justice STORY, of the Supreme Court of the United States, speaking in regard to the execution of powers by last wills and testaments, says: " The main point is to arrive at the intention and object of the donee of the power in the instrument of execution, and that being once ascertained, effect is given to it accordingly. If the donee of the power intends to execute, and the mode be in other respects unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful, under all the circumstances, then that doubt will prevent

it from being deemed an execution of the power. All the authorities agree that it is not necessary that the intention to execute the power should appear by express terms or recitals in the instrument. It is sufficient that it should appear by words, acts or deeds demonstrating the intention."

We find no case so like the one before us in its circumstances as *Nowell* v. *Roake*, first decided by Lord Chief Justice BEST, in the Court of Common Pleas, (2 Bing. 503,) afterwards reversed in the King's Bench, (5 Barn. & Cress. 730,) and the judgment of the King's Bench affirmed in the House of Lords, (6 Bing. 475.) We are not constrained by the decisions in this case as binding authority, as they were not rendered until a period long subsequent to our Revolution.

For the purposes of condensation we quote from Sugden on Powers, vol. 1, side page 383, his statement of the point decided, and of the case: "Although the testator has the entirety of an estate, yet if any share of it is vested in him only for life, with a power of appointment, a general devise of all his estates will only pass the share of which he is seized in fee, and a direction which might properly be applied to the entirety will not be construed to enlarge the gift. This was decided in *Nowell* v. *Roake*, when one moiety of an estate was settled by the testatrix to her husband for life, remainder to herself for life, remainder to such uses as she should appoint by deed or will, and for want of such appointment to the children of the marriage, with remainders over, and the testatrix afterwards bought the other moiety, which was conveyed to her in fee, and she had no other real estate, it was held in the Court of Common Pleas that a devise by her of all her freehold estates to one for life, on condition that out of the rents thereof he should from time to time keep such estates in proper and tenantable repair, with remainders over, passed the entirety of the estate, that is, operated at once as an execution of her power over one moiety, and a devise of her interest in the other. The court relied upon the general intention, and laid some stress upon the condition to keep the

estate in repair, as the devisee could not keep an undivided moiety in repair."

Lord WYNFORD, in the House of Lords, observed (Sugden, side. page 384,) " that he believed that nine hundred and ninety-nine persons out of a thousand would say, on reading this will, that the testatrix did intend by it to pass her whole property, and this is a question of intention. He knew that it was decided in *Sir Edward Clere's case,* that a will can not operate as an execution of a power, unless it refers to the power or the subject of it, or unless the will can have no operation without supposing that an execution of the power was intended. But he conceived that here the estate or subject of the power is referred to in the will, and that this is a case that never occurred before. The words of the will are, ' I give and devise *all my estates* in London and Surrey,' and she adds a condition to repair, yet it is said that these words may be satisfied by supposing that they refer only to that moiety which she had in absolute property; but he defied any ingenuity to show that the words applied only to the one moiety, and not to the other; that the tenant for life was to repair one moiety, and leave the other unrepaired. The testatrix is clearly speaking of the whole of her property, and this will may be held to apply to all, and to be an execution of the power, in perfect consistency with the doctrine in *Sir Edward Clere's case.*"

Chief Justice BEST said, in delivering the judgment of the Common Pleas, " It has long been settled, that an express declaration of the intent to execute a power is not necessary; on the other hand, no terms, however comprehensive, although sufficient to pass every species of property, freehold and copy-hold, real and personal, will execute a power, unless they demonstrate that a testator had the power in his contemplation, and intended by his will to execute it. It has often been said that a power is not executed, unless the power or the estate be referred to by the will, or the will can have no effect except as an execution of the power. We are not

disposed to say these are the only cases, and we have high authority for saying they are not. They are only put as instances of the strong and unequivocal proof that is required; but if there were a rule that courts of law are only permitted to hold a power well executed in these instances, we should say that this case comes within it, for we think the estate is referred to."

He further said: "We think it impossible to impute any other intention to Mrs. Trymmer than that of executing the power she had reserved to herself in the estate in question; and we think that intention is demonstrated by every part of the will, and particularly by a reference to the estate over which she had this power. Mrs. Trymmer being seized of one undivided moiety, and having a power over the other undivided moiety, of which power she was the creator, gives all her freehold estates in the city of London and county of Surrey, or elsewhere, to her nephew, John Roake. This is not a description of her interest in the estates, but of the estates, and shows an intent to pass all the property that she had a right to dispose of. I should be inclined to think these words referred to both parts of this property."

Mr. Sugden, in commenting on this case, says: "In a case like *Nowell* v. *Roake*, the nature of the property might, without introducing any uncertainty into the rule, be considered to manifest a sufficient intention. I hold an estate as an entirety, but the tenure is in moieties, and one is subject only to my appointment; I give, by my will, all my estates to one for life. The rule would exclude that moiety within the power, if it stood there, but I direct that the tenant for life shall keep the estates in repair. The estate can not be repaired by undivided moieties, although two tenants in common may repair the estate; and therefore the direction might, in favor of the intention, have been held, according to the decision in the Court of Common Pleas, as evidence that she was dealing with the entirety." This, it must be borne in mind, was said by Mr. Sugden from the standpoint that there can be no

sufficient demonstration of an intention to execute a power
except in the three classes of cases to which we have referred.
But, as we have intimated, this stand-point we are not pre-
pared to concede.

In *Blagge* v. *Miles,* Mr. Justice STORY has criticised the
opinion of Lord Chief Baron ALEXANDER, in delivering
the judgment of the judges in the House of Lords in this
case of *Nowell* v. *Roake,* and in re-affirming the doctrine
as to the enumerated three classes of cases, and he says,
"Lord Chief Justice BEST has put these classes of cases upon
the true ground. They are instances of the strong and une-
quivocal proof required to establish the intention to execute
the power; but they are not the only cases."

But, to get closer to the substance of the matter now before
us : Sarah Funk owned one undivided third of this estate in
fee, and, under the will of her deceased husband, she had a
life estate in, and full power and authority to dispose of, the
other undivided two-thirds as she might think proper, by will
or otherwise, before her death. In her last sickness she makes
her will, in which, after certain specific bequests of personal
property, she makes disposition of "all and singular the rest,
residue and remainder of my estate, real and personal, of
whatever kind and wheresoever situated." By any construc-
tion which can be given the will she disposed of the one un-
divided third that she held in fee, and, so far as the right to
hold and enjoy during life and dispose of as she saw fit either
before or at death could make it hers, the other two-thirds
was hers also. When, therefore, she spoke of all her real
estate, and the undivided one-third was necessarily included,
did she not refer also to the undivided two-thirds? In the
language of Lord Chief Justice BEST, "This is not a descrip-
tion of her interest in the estates, but of the estates, and shows
an intent to pass all the property that she had any right to
dispose of."

The case of the property not subject to the power being an
undivided interest in the same property the other undivided

interest in which was covered by the power, seems never to have arisen before *Nowell* v. *Roake.* The property not subject to the power to answer the requirement was present there as well as here; but neither that case nor this turns upon the last point determined in *Sir Edward Clere's case,* that "the devise ought of necessity to enure as a limitation of an use, or otherwise the devise would be utterly void." These cases proceed upon another ground entirely. They stand upon the ground of the general intention to be gathered from a consideration of the whole will and from the situation of the property. The fact of co-existing undivided interests, one within and the other without the power, is but one element in the proof of intention, but a circumstance of great weight.

Here, too, the disposition of her real estate of whatever kind was coupled with an order and direction to sell "my real estate," and make all deeds and conveyances " necessary to assure and perfect in the purchaser or purchasers thereof the *full title thereto,*"—that is, the title to her real estate, not the title to her interest in the real estate. These words would seem to apply to the whole property and to refer to both parts thereof, as well that held under the power as that held by a different tenure. And other parts of the will specifically disposed of other property in which she only had a life estate under the will of her deceased husband and a like power of disposition. The evidence shows she had no gold watch except one bequeathed to her for life with the like power of disposition, and that most of the furniture she had was held by like tenure and with like power of disposition. And yet, just preceding the disposition of her real estate, she bequeathed " my gold watch " to the nephew and namesake of her husband, and she bequeathed " all my household furniture " to her daughters. Now, she had no authority to bequeath the watch and the furniture which had been her husband's, except by virtue of the power in her husband's will. She had in such property, strictly speaking, only a life estate with full power of disposition before her death. That she did exercise

the power of disposition delegated by the prior will, in reference to these articles of personal property, and then proceeded to dispose of "my" real estate, using the same language she had used in bequeathing the chattels "my watch," "my furniture," would seem to afford strong evidence she intended her will to work not only by the interest, but by the power. It has been long settled that a will may operate both as an appointment under a power and as a conveyance of an interest. All that is required is that it should appear it was so intended.

In *Hughes* v. *Turner*, 3 Mylne & Keene, 666, the Master of the Rolls, Sir JOHN LEACH, said: "There is a gift here of a gold watch, piano forte and music books, which she could only dispose of by the execution of her power. It is argued, that she had assumed and treated these as her own property, independently of her sister's will. No such inference judicially arises. A gift of the rest, residue and remainder of her real and personal estate imports a gift of the rest and residue of that estate which she considered her own and had previously partly disposed of. A gift of that which a testator can not dispose, except in execution of a power, necessarily manifests an intention to execute that power." The matter of the Cardiganshire estate was also relied on by the Master of the Rolls in this case, but the decision of the House of Lords in *Bowes* v. *Bowes,* effectually disposed of this Cardiganshire matter. And so the cause came up again for a rehearing before Sir C. C. PEPYS, his successor as Master of the Rolls. It is true the judgment was otherwise upon the rehearing, principally by force of the *Bowes case,* but upon this point now in review the consideration of the court only was that a reference to part of the subject, or to some of many subjects of the power, will not be sufficient to make a will operate as an execution of the power, when there is *no other indication of an intention to execute it.* But here, we think there are other indications of an intention to execute, and we only regard the bequests of the watch and furniture as cumulative evidence, derived from the face of the will itself, of the intent.

When the subject of the power is real estate, and the question is as to the execution of the power by the devise, it is the well settled doctrine, you may always look at the condition of the property and the facts *dehors* the will, to arrive at the intention of the testator. These facts are, in addition to the evidence in regard to the watch and furniture, that Sarah Funk held, under the will of her deceased husband, a life estate in two-thirds of the south thirty feet of lot 6, with power to dispose of the same as she thought fit; that, after the death of her husband, she purchased the other undivided one-third interest, and the same was conveyed to her in fee; that she also purchased other real estate in fee, and that at the time of the execution of her will and of her decease, she held the entirety of said south thirty feet, one-third in fee simple absolute, and the other two-thirds for life, with full power of disposition by will or otherwise. There is no judicial presumption that at the time she made the devise she had forgotten either that she owned this thirty feet, or by what tenures she held it, or that she had power of appointment under the will of Absalom Funk as to the undivided two-thirds. The presumption would be she knew her own titles, and the powers she had in reference to the property she held and enjoyed. This presumption is made manifest fact when we see her disposing in her will of property which she could legally only dispose of by virtue of the powers in the first will. It would hardly be contended the gift of the watch was not a valid execution of the power in the first will, so far, at least, as that watch is concerned. But it was not a good execution of the power unless she intended to execute it. The fact she did specifically execute it, conclusively establishes that she had such intention, and, having such intention, she must have known and remembered the power vested in her by the first will. She thus knowing and remembering the powers she had, and devising all her real estate to trustees to be sold as soon as the same could be done, and the proceeds divided among her children and grandchildren, is there any reasonable

35—92 ILL.

and consistent theory other than that she intended to execute the power, and wished the entirety of the thirty feet of ground sold? Again, there is this further fact *dehors* the will, that, in the absence of an appointment by her, the undivided two-thirds interest she had under the power would have to be divided among two hundred and twenty-two heirs of her deceased husband. So that, unless we find an intent to act by the power, she was leaving an undivided one-third interest in this small parcel of land to be held in common with two hundred and twenty-two tenants of the undivided two-thirds interest. This would appear absurd, especially when considered in connection with the injunction for a speedy sale of her estate, and the caution in her will against any sacrifice of her property.

It is a question of intention. If it were only admitted that the rules by which that intention may be ascertained were not fixed and settled, then it can not be doubted but that the evidence afforded by this will and this record establishes that intention beyond a reasonable doubt. If the intention is clear and manifest, it is all that is required by that which we have designated as the fundamental rule; to require more would be, as is suggested by Justice STORY, to make "the cases govern the general rule as to intention, and not the rule the cases."

The demands of substantial justice do not require we should follow the subtle niceties of some of the English cases; and such course would be inconsistent with the liberal rules we have heretofore announced should govern in the ascertainment of the intentions of testators.

The English Parliament has radically changed the law of that country by the statutes of 7 Will. IV. and 1 Vict. ch. 26; and that, too, to such an extent that a general devise now operates as an execution of a general power of appointment, unless a contrary intention appears. As we have seen, Justice STORY refused to follow the technical rule established by some of the cases.

In *Andrews* v. *Brumfield*, 32 Miss. 108, and in *White* v. *Hicks*, 33 N. Y. 383, the courts expressly repudiated the doc-

trine of the English cases establishing that the amount of the testator's personal property could not be inquired into to show an intention to execute a power of appointment, and the decisions were in no way predicated upon local statutes. And in *Amory* v. *Meredith*, 7 Allen, 397, the Supreme Court of Massachusetts, also in the absence of any statutory provision, decided in the very teeth of the rule said to be deducible from *Clere's case*; and the case is a strong one to show the rank injustice that might be done by an adherence to that rule.

There are no former decisions of this court that militate against the rule we now announce. In *Wimberly* v. *Hurst*, 33 Ill. 173, we remarked that where a conveyance is general it will be held as an execution of a power, *if it would otherwise be wholly inoperative.* This is a mere reiteration of the real point in Clere's case, *et res magis valeat, quam pereat.* It is entirely consistent with what we now hold; and we are ready to repeat it when occasion requires. In *Coffing* v. *Taylor*, 16 Ill. 474, and in *Davenport* v. *Young*, id. 552, the court was speaking in reference to the construction to be given to deeds and not in regard to wills, and what was said in those cases was properly said under the circumstances of the cases then before us. As was said by us in *Butler* v. *Huestis*, 68 Ill. 596, "we are disposed to regard what we must know was the clear intention of the testatrix, which we gather from the will itself when construed in connection with the power, as the all controlling element in the decision of the case. If we are to interpret wills in the light of precedents, we ought to follow those that are most in harmony with the genius and laws of this country, and the manners and customs of its people. We ought rather to be guided by those that would most effectually do justice."

We prefer, then, to follow the broad and liberal rule announced by Lord COKE in *Scrope's case*, and by Mr. Justice STORY in *Blagge* v. *Miles*, and that is based upon principle, and thus carry into effect the intention of the testatrix, rather than to defeat such intention by following the narrow and

technical rule predicated upon the cases. The provisions of the whole will taken together and the facts *dehors* the will clearly indicate, to our minds, an intention to pass the whole estate, and we think the devise should, in favor of the intention, be held to work both by the interest and by the power, and to pass the entirety.

We find no error in the record, and the judgment of the circuit court must be affirmed.

*Judgment affirmed.*