Anson O. Fairman, Appellant, *v.* John Beal, Appellee.

APPEAL FROM MADISON.

If land be devised to a person, with general power to dispose of the same, an estate in fee-simple passes.

But if it be devised to a person for life, and " at her death she may dispose of it as she pleases," an estate for life only passes; and if the devisee dies without disposing of the reversion, it goes to the heir of the devisor.

In such a case, the words " at her death," will not, by implication, restrain the exercise of the power to a will; but the devisee may properly exercise the power by deed, but it must be executed strictly as directed.

Possession continued for a period of over twenty years, of a part of a tract of land, and the exercise of acts of ownership over the residue, under claim of title to the whole, constitutes such a possession as will authorize the possessor to maintain the appropriate action against a stranger who interferes with his possession or injures the inheritance.

The entry and possession of the improved portion, under a conveyance in fee of the whole, there being no adverse possession of any part, must be construed as coextensive with the grant.

This cause was heard before Underwood, Judge, at March term, 1852, of the Madison Circuit Court.

W. Martin, for appellant.

H. W. Billings and J. Gillespie, for appellee.

Treat, C. J. This was an action of ejectment brought by Beal against Fairman and Pierce, to recover the possession of the south-east quarter of section sixteen, in township three north, of range nine west, situated in Madison county, and containing one hundred and sixty acres. The death of Pierce was afterwards suggested, and leave obtained to prosecute the suit against Fairman. On the trial, the plaintiff proved a state of facts as follows: George Hewitt entered the west half of the quarter section in 1815; and Nathan Belch entered the east half in 1831. Belch died in March, 1834, without issue; his wife, Margaret Belch, surviving him. He left a will containing

this provision: "I do hereby devise and bequeathe my beloved wife the farm, and improvements thereon, on which I now live, known as here described, south-east quarter of section sixteen, in township three north, range nine west, in the county of Madison, and State of Illinois, during her natural life to take the issues and profits thereof; at her death, she may dispose of it as she pleases." In June, 1846, Margaret Belch, for the consideration of fifteen hundred dollars, conveyed the quarter section to Obadiah Waddle; the deed containing a reference to the will. Mrs. Belch died, intestate, in 1846 or 1847. In 1847, Waddle conveyed the premises to Beal, the plaintiff. Hiram Arthur testified, that Nathan Belch resided on the quarter section in 1830, and continued to reside thereon till his death; he had an inclosure of about forty acres, which embraced a portion of each of the eighty acre lots; he cut wood and timber on the uninclosed part of the quarter section; Mrs. Belch continued in possession from the death of her husband until 1844, when she left in consequence of high water; her son, by a former husband, remained in possession, as a member of her family, till 1846. Benaiah Robinson testified, that Belch occupied the improved portion of the land in 1833, and claimed title to the whole quarter section. Calvin Kinder testified, that Belch was in possession of the land from 1825 up to his death, and claimed title thereto; the widow remained in possession till 1844, when she left in consequence of high water, but returned in 1845; Waddle subsequently went into possession, and Beal received the possession from him; the inclosure was a clearing, the rest of the quarter section being woodland. Jefferson Lox testified, that he rented the land from Beal in 1847, and quit the possession in the spring of 1848; Young then went into possession, and Fairman and Pierce got into possession before his year expired; Fairman still remained in possession. John O. Merritt testified, that Pierce told him that he and Young had rented the premises from Beal, with a view of getting the possession, and keeping it; Fairman went into possession in January, 1849, and before Young's year was out.

The jury found the issue for the plaintiff. The court refused to grant a new trial, and rendered judgment on the verdict. Fairman prosecuted an appeal.

If land be devised to a person, with general power to dispose of the same, an estate in fee simple passes. Such a power of disposition amounts to an absolute gift of the property. But if it be devised to a person for life, with power to dispose of the reversion, an estate for life only passes; and if the devisee dies without disposing of the reversion, it goes to the heir of the de-

visor. The creation of the life-estate controls the operation of the power, and prevents it from enlarging the estate to a fee. Nothing passes under the clause conferring the power, until the power itself is exercised. Sugden on Powers, ch. 3, § 1; 4 Kent's Com. 319 and 536.

It was the manifest intention of the testator to give his wife a life-estate in the land, and a general power of disposition over the inheritance. His object was to make provision for her support by giving her the usufruct of the property; and also to enable her to transfer the fee to such persons as she might consider the proper objects of her bounty. He first carved out a life-estate in her favor, and then gave her authority to dispose of the reversion. This is the only construction that can be put upon the will, which will give full effect to the language used by the testator. A construction that the fee passed to the devisee would render inoperative the expressions, "during her natural life," and "at her death, she may dispose of it as she pleases." The first of these clauses was inserted to describe and qualify the estate devised; and the last to confer the power to dispose of the inheritance. If the devisee died without a proper execution of this power, the estate passed to the heirs of the devisor.

Where a power is conferred to dispose of an estate, without defining the mode in which the power must be executed, it may be exercised either by deed or will. But if it is required to be executed by deed, it cannot be done by will; and if a will is required, a deed will not suffice. Although courts cannot dispense with the form prescribed for the execution of a power, yet they generally incline to put a liberal construction on the words of the power. Sugden on Powers, ch. 6, § 2 and 3. In this case, a general power was given to the tenant for life to dispose of the reversion. The mode in which it was to be exercised was not prescribed, unless it is to be implied from the phrase "at her death," that a will was intended. These words do not restrict the execution of the power to a testamentary disposition. Sugden, in his valuable treatise on Powers, in ch. 6, § 3, says: "But the mere circumstance of the estate being limited to A. for life, and 'after his death,' or 'then,' to be at his disposal, will not, by implication, restrain the execution of the power to a will;" and the authorities referred to by him fully sustain his position. In Tomlinson v. Dighton, 1 Peere Williams, 149, land was devised to the wife for life, "and then to be at her disposal." The wife conveyed the inheritance by deed, and the court held it to be an effectual execution of the power. In a case reported in 3 Leonard, 71, the devise was of

lands to the wife for life, " and after her decease, she to give the same to whom she will." She made a grant of the reversion, and it was held to be a good execution of the power. Our opinion is, that Mrs. Belch took a life-estate under the will of her husband, with power to dispose of the inheritance; and that her deed to Waddle was a valid execution of the power. Under the will and deed, Waddle succeeded to all the title which the the testator had at the time of his decease.

Beal was entitled to recover the entire quarter section. He had the complete legal title to one of the eighty acre lots; and he, and those under whom he claimed, had been in the actual and uninterrupted possession of an inclosure embracing a part of both lots, for more than twenty years, claiming title to the whole quarter section, and exercising such acts of dominion over the uninclosed portion, as are usually exercised over woodland lying contiguous to the improvements of the owners. This long continued occupancy of a part of the land, and exercise of acts of ownership over the residue, under claim of title to the whole, constitutes such a possession of the whole, as will authorize Beal to maintain the appropriate action against a stranger, for any disturbance of the possession or injury to the inheritance. Beal acquired the actual possession of the improved portion under a conveyance in fee of the whole, and there being at the time no adverse possession to any part of the premises, his entry and possession must be construed as coextensive with the grant. Davis *v.* Easley, 13 Illinois, 192, and the cases there cited. It is apparent from the evidence, that Fairman was a mere intruder on the land. He did not show title in himself; nor did he connect his possession with the title of a third person. It is enough for the decision of this case, that Beal established, *primâ facie*, a right to the possession of the whole tract; and that this *primâ facie* case was in no respect rebutted by Fairman. The latter entered upon the possession of Beal, and failing to show any authority for the entry, or any right to retain the possession, he must restore it to Beal. Whether this twenty years' occupancy under claim of title constitutes such an adverse possession of the west half of the quarter section, as will bar the entry of Hewitt, or those deriving title from him, is a question that need not now be determined.

The judgment is affirmed.

*Judgment affirmed.*