MARY GOFF *et al.*

*v.*

GEORGE PENSENHAFER *et al.*

*Opinion filed April 18, 1901.*

1. WILLS—*conditions precedent and subsequent defined.* A condition precedent is one which must be performed before the interest affected by it can vest, while a condition subsequent is one by which an interest already vested may be divested or a contingent interest defeated before it vests.

2. SAME—*what not a waiver of performance of a condition precedent.* Failure of a testator in his lifetime to select the eighty-acre tracts under a provision of his will devising to his three children "eighty acres of land each, which I may select or elect for each to have out of may land," does not operate as an abandonment or waiver of the performance of such act as a condition precedent upon which a devise of a remainder was made to depend.

3. SAME—*when devise of remainder is based upon condition precedent.* If a testator devises to each of his three children eighty acres of land such as he may "hereafter select" for them, and in the next clause of the will provides that *after* such selection the remainder of the estate shall be divided equally between his wife and the three children, and at the death of the wife "whatever remains then of the bequest herein to her" to go to her daughter, the selection of the eighty-acre tracts by the testator is a condition pre-

cedent upon which the devise of the remainder depends, and if not performed by him the remainder descends as intestate property.

4. POWERS—*intention to execute a power need not appear by express recitals.* It is not necessary that the intention to execute a power, conferred by will, to dispose of the fee of land shall appear by express terms or recitals in the instrument executing the power, but such intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid.

5. SAME—*when power to dispose of fee is executed by quit-claim deed.* If a widow takes a life estate in an undivided one-fourth of certain property, under her husband's will, with power to dispose of the fee as to her share, her intention to execute such power is sufficiently shown, and the power executed, by a quit-claim deed to the other devisees, by which she grants, bargains, sells and releases to them all her right, title and interest in the land of which her husband died seized "which shall have (accrued) or shall hereafter accrue to her by virtue of the last will and testament of her deceased husband," and "releases and transfers to said grantees all her right and interest secured to her" by such last will and testament.

6. SAME—*the general doctrine as to execution of power stated.* It is better that the instrument of execution should recite the power in express terms and state that the execution is in pursuance of the power; but this is not essential if the instrument shows that the donee of the power had, when executing such instrument, the subject of the power in view.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

The original bill in this case was filed on December 5, 1898, and the amended bill on May 10, 1899, by Mary Goff and David Goff, her husband. The amended bill alleges that one John G. Pensenhafer, late of Sangamon county, now deceased, was, in his lifetime and when he died, seized of certain lands in Sangamon county amounting to about four hundred and ninety acres, there being embraced therein four tracts of eighty acres each, one tract of one hundred and sixty acres and one tract of ten acres; that he died testate on March 1, 1886, leaving him surviving his widow, Mary Pensenhafer, and three children, to-wit: Fredreka Pensenhafer, George Pensenhafer and Rebecca Pensenhafer, the said Fredreka having intermarried with one Minder and said Rebecca with one

Berkett; that the will of said testator, which bears date
June 1, 1874, is as follows: "First—It is my will that all
my just debts and funeral expenses be first paid.    Sec-
ond—I hereby will and bequeath to my three children,
Fredreka Pensenhafer, George Pensenhafer and Rebecca
Pensenhafer eighty acres of land each, which I may here-
after select or elect for each to have out of my land.
Third—After the above legacies or bequests are selected
to each of said heirs, then the remainder of my real es-
tate I hereby bequeath to Fredreka Pensenhafer, George
Pensenhafer and Rebecca Pensenhafer, and my wife,
Mary Pensenhafer, to be divided equally between them,
my wife retaining the houses and out-houses thereon,
and at her death whatever remains then of the bequest
herein to her, I will and bequeath to her daughter, Mary
Huber.    Fourth—At my death, if my wife Mary is then
alive, she to have the use and control of all personal
property of every description that I may then have,
and at her death, if any remain undisposed of by her,
then that part to be divided between my three children,
Fredreka Pensenhafer, George Pensenhafer and Rebecca
Pensenhafer and Mary Huber.    Fifth—I hereby appoint
George Pensenhafer executor of my last will and testa-
ment to carry out the provisions therein;" that George
Pensenhafer, with the knowledge of said Rebecca and
Fredreka, on March 23, 1886, caused the said will to be
admitted to probate in the county court of Sangamon
county, and was duly qualified as executor thereof, and
settled the estate of the deceased testator, and neither
of said children made any objection to the will when it
was admitted to probate, and neither has since that time
questioned its validity by any suit; that Mary Pensen-
hafer, the widow, remained in possession of the houses
and out-houses on said lands until March 27, 1886, at
which time she sold to said George Pensenhafer, Fred-
reka Minder and Rebecca Berkett all right, title and
interest in the said real estate and executed to them

a quit-claim deed; that, by the terms of said deed, the grantor, Mary Pensenhafer, widow as aforesaid, in consideration of $1500.00 "conveys and quit-claims to Fredreka Minder, George Pensenhafer and Rebecca Berkett, * * * all her right, title and interest in and to the following described real estate," (describing all the property hereinbefore mentioned as being owned by the testator at the time of his death); that, by the second clause of the said deed, "the said grantor for the consideration aforesaid hereby grants, bargains, sells, releases and quit-claims unto the said grantees all her right of dower and homestead in and to the described real estate or in and to any other land situated in the said county of Sangamon, of which the said John G. Pensenhafer died seized or possessed;" that, by the third clause of said deed, "for the consideration aforesaid the said grantor hereby grants, bargains, sells and releases unto the said grantees all her right, title and interest in and to the above described land, or any other real estate situated in the said county of Sangamon, of which the said John G. Pensenhafer died seized or possessed, which have or shall hereafter accrue to her by virtue of the last will and testament of her deceased husband, the said John G. Pensenhafer;" that, by the fourth clause of said deed, "for the consideration aforesaid and for the further consideration of two horses, one spring wagon, one cow, two hogs, all the meat, one-half of the potatoes, all the lard, chickens, ducks and geese, flowers in the large residence of the said John G. Pensenhafer, sold and delivered to the said grantor by the grantees, the said grantor does hereby grant, bargain and sell and transfer unto the said grantees, her right, title and interest in and to the money and personal property of every kind and description, of which said John G. Pensenhafer died possessed, whether such right, title or interest accrued to her as the widow of the said John G. Pensenhafer or as his devisee under his last will and testament;" that, by the fifth clause of

the said deed, "for the consideration last aforesaid the grantor hereby releases and transfers to the said grantees, all her right, and interest secured to her by the last will and testament of her deceased husband, John G. Pensenhafer;" that, by the sixth clause of said deed, "for the consideration last aforesaid, the said grantor hereby releases her widow's award which she might claim under the laws of this State, to the said grantees, and hereby covenants and agrees not to claim this award."

The bill then proceeds further to allege, that the said John G. Pensenhafer, after making his will and before his death, failed to select which eighty acres of land his said three children should have, as provided in the second clause of said will; that, upon the delivery to them of said quit-claim deed, said three children, George, Rebecca and Fredreka, took possession of said lands, and have been in possession of the same since that time, and have partitioned and divided the same among themselves, so that each is holding a definite portion thereof, but that complainants are not informed what portion of said lands each of said parties is holding in severalty; that, under said will, the widow, Mary Pensenhafer, acquired a life estate only, or a life estate, coupled with a power to sell and convey the fee, of an undivided one-fourth of all the above lands, after setting apart to each of the devisees named in the second clause of said will eighty acres of land, and the right to hold and enjoy the houses and out-houses upon said land during the term of her natural life, or until she should exercise the power to sell and convey the fee, if she had said power; that complainant, Mary Goff, formerly Mary Huber, and the same Mary Huber named in the will, by virtue of the will, took a vested remainder in all of the lands, houses and out-houses which were so devised to her mother, the said Mary Pensenhafer; that said quit-claim deed quit-claimed to the grantees therein the life estate only of said widow; that, if said widow had the power to sell and convey the

fee coupled with her interest in said land, she did not exercise that power by the execution and delivery of said quit-claim deed, but that said deed, containing no reference to a power if she had any, operated only upon the interest of said widow; that said Mary Pensenhafer died on October 22, 1897, leaving the complainant, Mary Goff, her daughter; that said George, Rebecca and Fredreka are entitled to retain out of the lands eighty acres each, and complainants accord to them the privilege of selecting out of the same which particular eighty acres of land each of them shall retain; that they and said complainant, Mary Goff, are each entitled to an undivided one-fourth in fee of the remainder of said land; that said Mary Goff is entitled to whatever remains of the houses and out-houses mentioned in the third clause of said will; that said George, Rebecca and Fredreka, refused to enter into a voluntary partition of the lands, although requested to do so by complainant, Mary Goff.

The bill prays, that the share of the lands belonging to Mary Goff, and to the other owners above named, be ascertained by the court; that partition be made between the parties according to their rights; that commissioners be appointed to make such partition, allowing said George, Rebecca and Fredreka to select for themselves, if they desire so to do, eighty acres each out of the lands held by each of them in severalty; that, in case of their failure to make such selection, the commissioners appointed will first allot to each of them eighty acres, and then partition the remainder of the premises among the parties interested therein; and that, in case a division cannot be made, etc., the premises be sold under the direction of the court, and the proceeds divided.

The defendants to said amended bill, being the three children above named, filed a demurrer thereto. On July 14, 1899, the court sustained the demurrer to the amended bill, and the complainants elected to stand by their bill. Thereupon, the court rendered a decree dismissing the

bill at the costs of the complainants, and ordered that the defendants recover their costs against the complainants and have execution therefor. From the decree, sustaining the demurrer and dismissing the bill, the present writ of error is prosecuted to this court.

S. H. CUMMINS, F. P. DRENNAN, and B. GALLIGAN, for plaintiffs in error.

PATTON, HAMILTON & PATTON, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—By the second clause of the will of John G. Pensenhafer he willed and bequeathed to his three children "eighty acres of land each which I may hereafter select or elect for each to have out of my land;" and, by the third clause thereof, he provided as follows: "After the above legacies or bequests are selected to each of said heirs, then the remainder of my real estate I hereby bequeath to Fredreka Pensenhafer, George Pensenhafer, and Rebecca Pensenhafer, and my wife, Mary Pensenhafer, to be divided equally between them, my wife retaining the houses and out-houses thereon, and at her death whatever remains then of the bequests herein to her I will and bequeath to her daughter, Mary Huber." The testator lived nearly twelve years after making his will, but did not select eighty acres of land for each of his three children, as provided for in the second clause of his will.

It is contended by defendants in error, that the selection or election of the particular eighty acres of land, which each of his children was to take, was a condition precedent, upon which the remainder named in the third clause was to vest in his three children and his wife; and that, inasmuch as the condition was never performed or never happened, the third item of the will is wholly inoperative.

The language of the third clause is clear and explicit. "After the above legacies or bequests are selected to each of said heirs, then the remainder of my real estate I hereby bequeath," etc. After the selection is made, then only is the remainder bequeathed, the remainder being such of the lands as remain after the selection out of the same of three tracts for each of his children. It is claimed, that the third clause fixes upon the selection of the eighty acres for each of the children by the testator as a condition precedent to the devise or bequest of the remainder. "A condition precedent is one, which must be performed before the interest affected by it can vest. A condition subsequent is one, by which an interest already vested may be divested, or a contingent interest defeated before vested." (29 Am. & Eng. Ency. of Law,—1st ed.—p. 473).

In *Nevius* v. *Gourley*, 95 Ill. 206, a will provided that, if a devisee therein named should pay certain legacies specified out of his own private funds within one year of the date of the death of the testator, and should settle the estate of which he was appointed executor without any other charge to said estate, then the testator gave and bequeathed to such devisee a certain described tract of land; and it was there held, that the conditions named were conditions precedent, and, unless performed according to the intent of the testator, the title to the land would not vest. In that case the general doctrine is announced that, where a devise is to take effect only upon the performance by a devisee of a precedent condition, the condition must be strictly performed. It was there said: "Where the condition is precedent, the legatory takes nothing till the condition is performed, and, consequently, has no right to come and demand the legacy, but it is otherwise where the condition is subsequent." It cannot be said, here, that the condition is subsequent, because it does not operate upon an estate already created and vested, nor render such estate liable to be de-

feated. (*Star Brewery Co.* v. *Primas*, 163 Ill. 652). In *Finlay* v. *King*, 3 Pet. 346, Chief Justice Marshall said: "If the language of the particular clause, or of the whole will, shows that the act, on which the estate depends, must be performed before the estate can vest, the condition is of course precedent; and, unless it be performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent." In the case at bar, the act of selecting the three tracts of eighty acres for each of the testator's children was an act, which necessarily preceded the bequest of the remainder named in clause 3 of the will.

In *Mills* v. *Newberry*, 112 Ill. 123, a daughter in her will made a devise in these words: "In event I die unmarried, leaving my mother surviving, I devise and bequeath to her all my property,  *  *  *  upon the express condition, however, that she devise, by will to be executed before receiving this bequest, so much thereof as shall remain undisposed of or unspent at the time of her decease, to such charitable institution for women, in said city of Chicago, as she may select;" and it was there held that the condition named in the devise thus quoted was a condition precedent, and that the mother, having declined to execute the will and perform the condition, took nothing under the will; and it was further held, that, the legacy having been given upon a condition not performed, went to the next of kin as an estate undisposed of under the will; in other words, as intestate property. In *McKee* v. *McNeil*, 41 Miss. 17, a soldier in the confederate army made his will to this effect: "If I never return home, I want all I have to be my wife's;" and, in that case, it appears, that the soldier's will was made while he was absent from home in the army, and that he returned home, and in a few weeks afterwards died; it was held, that the will was to take effect upon the contingency that

the testator never returned home, and, that event having happened, the will had no effect, and was void.

In *Damon* v. *Damon*, 8 Allen, 192, a testator who made his will when about to take a voyage to Cuba, provided as follows in the first clause thereof: "If, by casualty or otherwise, I should lose my life during this voyage I give and bequeath to my wife, Ann, the use and behoof of the house," etc., and the court there say: "The condition is thus grammatically, and according to common use of phraseology, attached to, and qualifies, the particular bequest. He gives a certain piece of property to his wife, if he loses his life during the voyage. There is no gift to her without that qualification. Suppose any other condition had been expressed—'If I die before I reach a certain age,' or 'before a certain house is finished,' or 'if the legatee survives A,' could it be doubted that it would make the bequest conditional?" Conditions are subject to the well known division into conditions precedent and conditions subsequent. When a condition is of the former sort the legatee has no vested interest till the condition is performed. (*Nevius* v. *Gourley*, 97 Ill. 365; *Campbell* v. *McDonald*, 10 Watts, 179; *Barnum* v. *Baltimore*, 62 Md. 275; *Bowman* v. *Long*, 66 Wis. 366).

In *Gibson* v. *Seymore*, 102 Ind. 485, one clause of the will of a testatrix provided that, "if my husband survive me, I desire at his death that all I may own or be possessed of shall go to and become the property of my well beloved step-daughter," naming her; and, the husband having died before the death of the testatrix, it was there held that, as to the property in question, the testatrix died intestate.

Counsel for plaintiffs in error refer to a number of cases, which hold that the non-performance of a condition precedent is excused, and a forfeiture prevented, when the non-performance is caused by the grantor in making the condition. They further rely upon the well known doctrine, that he, who prevents a thing from be-

ing done, cannot avail himself of non-performance, and cite cases applying this doctrine to conditions precedent. The authorities thus referred to involve cases where the rights of the parties were decided under contracts and conveyances based upon a consideration. Here, no consideration passed from Mary Huber, or Mary Goff, to the testator. The devisee takes by the mere grace of the testator, and he may impose such conditions as he pleases, provided they are lawful. The testator in the case at bar had the right to say, as he did in his will, that the title to the real estate should not vest until he should do a certain act. There is nothing immoral, or illegal, or against public policy, in the condition, upon which the bequest or devise is here made to depend. It is said in some of the text books that, if the condition becomes impossible by the act of the testator, the condition is itself discharged. (29 Am. & Eng. Ency. of Law,—1st ed.— p. 475; Theobald on Law of Wills,—2d ed.—p. 400). But the cases, upon which these statements in the text books rest, are cases where the performance of the condition by the devisee named in the will has been made impossible by the testator. They are not cases where the condition named is to be performed, as is the case here, by the testator himself. (*Gath* v. *Burton*, 1 Beav. 478; *Dailey* v. *Langworthy*, 3 Bro. P. C. 359).

We are of the opinion that, inasmuch as the condition precedent, upon which the bequest of the remainder, named in the third clause of John G. Pensenhafer's will, was made to depend, never happened, the provision contained in said third clause never became operative. This being so, the property therein referred to passed as intestate estate to the defendants in error as heirs of the testator; and the plaintiff in error, Mary Goff, took nothing thereunder.

*Second*—If, however, clause 3 of the will is not inoperative for failure in the performance of the condition above mentioned, the clause cannot be regarded as vest-

ing any interest in the complainant, Mary Goff, in view of the deed which was executed by her mother, Mary Pensenhafer, in her lifetime. If the third clause of the will gave the widow, Mary Pensenhafer, the fee in an undivided one-fourth of the remainder of the lands therein named, then, of course, all her interest passed to the three children of the testator by the deed which she made on March 27, 1886. It is unnecessary, however, to decide whether a fee was vested in the widow by the third clause of the will or not. The most favorable position, which can be taken for the plaintiff in error, Mary Goff, is to assume that, under the third clause of the will, her mother, Mary Pensenhafer, took a life estate in an undivided fourth of the remainder therein named, with power to dispose of the same during her life. As we understand the argument of counsel for plaintiffs in error, it is that, by the third clause of the will, the widow was given a life estate in the undivided fourth of the remainder with power to sell and convey the fee thereof. Without deciding that such is the correct meaning of the clause, we may assume it to be such for the purposes of this decision.

It is contended, on behalf of the plaintiffs in error, that the deed executed by the widow only conveyed to the grantees therein named the life estate of the widow, and not the fee. In support of this position authorities are referred to, which hold that, "where the same person has an interest in land, and also a power to sell and convey the fee, and makes a conveyance proper to convey his interest, without any reference to the power, the conveyance will operate only to convey his interest." The question then arises whether the deed, executed by the widow on March 27, 1886, merely conveyed the life estate, or whether it was an execution of the power said to have been lodged in the widow to dispose of the fee. If the widow, Mary Pensenhafer, by the deed in question, executed the power of disposition, then the title to an

undivided fourth of the remainder passed to the defendants in error, who were children of the deceased testator, and no interest remained to be taken by the plaintiff in error, Mary Goff.

It is not necessary, that the intention to execute the power in such a case as this shall appear by express terms or recitals in the instrument executing the power.

In *Blagg* v. *Miles*, 1 Story's C. C. 446, three classes of cases were held to be sufficient to show an intention to execute a power, to-wit: *First*, where there is a reference in the will, or other instrument, to the power; *second*, or reference to the property which is the subject on which the power is to be executed; *third*, or where the provision in the will, or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity. These classes, however, are not exclusive, and other circumstances may demonstrate the intention of the donee of the power to execute it.

In Sugden on Powers (ed. of 1861, p. 289,) it is said: "A donee of a power may execute it without referring to it or taking the slightest notice of it, provided that the intention to execute it appear." In *Christy* v. *Pulliam*, 17 Ill. 59, we said: "When the mode of executing the power is not defined, it may be executed by deed or will, or other simple writing, if sufficient to convey the subject matter of it. * * * And the power need not be referred to in the instrument executing it."

In *Funk* v. *Eggleston*, 92 Ill. 515, this whole subject is elaborately discussed and the leading cases referred to, and the doctrine above announced in the case of *Blagg* v. *Miles, supra,* is referred to with approval. In *Funk* v. *Eggleston, supra,* it was said, that the rule to be deduced from the English authorities is, that the intention to execute the power is demonstrated where there is a reference to the power, or to the subject, or property covered by the power, or where the instrument would be inoperative without the aid of the power. And, in addition

to the three classes thus named, it was there held that the intention to execute the power, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative.

In *Fairman* v. *Beal,* 14 Ill. 244, a testator left a will containing this provision: "I do hereby devise and bequeath my beloved wife the farm, and improvements thereon, on which I now live * * * during her natural life to take the issues and profits thereof; at her death, she may dispose of it as she pleases;" and it appeared that, after the death of the testator, the widow conveyed the farm away, "the deed containing a reference to the will;" and it was there said that the widow "took a life estate under the will of her husband, with power to dispose of the inheritance; and that her deed * * * was a valid execution of the power. Under the will and deed, Waddle [the grantee in the deed] succeeded to all the title which the testator had at the time of his decease."

In the case at bar, the deed, made by Mrs. Pensenhafer, as recited in the statement preceding this opinion, refers, in the third clause thereof, to the will of her deceased husband, John G. Pensenhafer, and therein grants, bargains, sells and releases all her right, title and interest in the land, of which her husband died seized, "which have (accrued) or shall hereafter accrue to her by virtue of the last will and testament of her deceased husband." This language of the deed brings the present case within the principle announced in *Fairman* v. *Beal, supra.*

The weight of authority is in favor of the position that, where there is a reference either to the power itself, or to the subject of the power, and the intention to execute the power appears in any way, the instrument, relied upon as an execution of the power, will be held to be an exercise of such power. (*Harvard College* v. *Balch,* 171 Ill. 275; and also *Funk* v. *Eggleston, supra*).

In *Dunning* v. *VanDusen,* 47 Ind. 423, where the will gave to the devisee an estate for life with the power of

the disposition of the fee, it was held that an ordinary warranty deed in fee simple executed by the devisee, which made no reference to the will by which the power of disposition was given, and contained no evidence of an intention to execute the power, conveyed only the life estate of the devisee; and in that case *Fairman* v. *Beal*, *supra*, was referred to in the following words: "It may be observed that the case before cited from 14 Ill., which is in some respects like the one in judgment, is distinguishable from that in this, that, in that case, the deed, which was held to execute the power, contained a reference to the will creating the power."

In the case of *Collier's Will*, 40 Mo. 287, a testator bequeathed to his wife the life estate in his property, real and personal, and conferred upon her the right to dispose of one-half of such property at her decease by testamentary disposition as she might deem right and proper, and subsequently the wife by her will gave to her mother her entire property for life, and used the following words: "Including any and all rights acquired by me under the will of my late husband;" and it was there held, that, by the use of the words quoted, the wife, who was the donee of the power contained in her husband's will, made thereby in her own will a direct reference to the power, and that the words in question were sufficient evidence of an intent to execute the power. In the case at bar, the fifth clause of the quit-claim deed, executed by Mrs. Pensenhafer to the children of her deceased husband, uses the following words: "The grantor hereby releases and transfers to said grantees, all her right and interest secured to her by the last will and testament of her deceased husband, John G. Pensenhafer." The words thus used in the fifth clause of the deed in the case at bar are almost precisely the same as the words used in the case of *Collier's Will*, *supra*. If, in the latter case, a direct reference to the power was made by the use of said words and the same were there sufficient evidence of intent to execute the

power, it must be held that, here, the same words contain a direct reference to the power and are sufficient evidence of the intent of Mrs. Pensenhafer to execute the power.

In *Funk* v. *Eggleston, supra,* it appeared that, in the will, which was claimed to be the execution of a power, the testatrix bequeathed certain personal property, which had been her husband's, and that she had no authority to do so except by virtue of the power in her husband's will; and it was there said that she had in such property, strictly speaking, only a life estate with full power of disposition before her death; and the fact, that she exercised the power of disposition delegated by the prior will in reference to the articles of personal property, and then proceeded to dispose of her real estate in the same language which she had used in bequeathing the personal estate, was held to afford strong evidence that she intended her will to work not only by the interest, but by the power. It has long been settled, that a will may operate both as an appointment under a power and as a conveyance of an interest, and there is no reason why a deed may not operate as an appointment under a power and as a conveyance of an interest. As was stated in *Funk* v. *Eggleston, supra:* "All that is required is that it appear that it was so intended." In the case at bar, the fourth clause of the deed, executed by Mrs. Pensenhafer, grants, bargains and sells unto the grantees therein her right, title and interest in and to the personal property of every kind of which her husband died possessed, whether such right accrued to her as the widow of John G. Pensenhafer, or as his devisee under his last will and testament. She had no authority to transfer the personal property except by virtue of the power in her husband's will, and the fact that she exercised this power with reference to the personal property, and then disposed of the realty in substantially the same language, affords strong evidence that she intended her deed not only to pass her life interest, but to be an execution of the power

conferred by her husband's will, if any such power was thereby conferred.

It is strenuously insisted, however, on behalf of the plaintiffs in error, that, inasmuch as the deed executed by Mrs. Pensenhafer was a mere quit-claim, it had the effect of passing only her life interest in the property, and for that reason cannot be regarded as such an execution of the power in her husband's will, as disposed of the fee of the property. There would be much force in this contention, if the first clause of the deed executed by her were the only clause in her deed. But, taking the whole deed and all its clauses together, we think it clearly appears that it was her intention to transfer every conceivable interest, which she had under her husband's will, not only her life estate therein, but the fee thereof. In *Hanna* v. *Ladewig*, 73 Tex. 37, a widow who had the power under her husband's will to dispose of certain real estate according to her pleasure and to sell and convey the same, executed a deed conveying all her "right, title and interest, either in law or equity," and it was held that this deed from the widow operated to vest the title in the grantee named therein, and not only passed her life estate in the land, but was also an execution of the power conferred in the will.

The general doctrine upon this subject has been stated in the following words: "It is better that the instrument of execution should recite the power in express terms, and state that the execution is in pursuance of the power; but this is not essential, if the instrument shows that the donee had, when executing it, the subject of the power in view." (18 Am. & Eng. Ency. of Law,—1st ed.—p. 929).

Adopting the construction of the third clause of the will, which is contended for by plaintiffs in error, we are of the opinion, that the deed executed by the widow in the case at bar must be held to show that, as donee of the power, she had, when executing it, the subject of the power in view. As, therefore, the whole interest in the

property passed to the children of John G. Pensenhafer by the deed executed by his widow, no interest in the property remained in her at the time of her death, and hence the plaintiff in error, Mary Goff, took nothing.

For the reasons above stated, we are of the opinion that the circuit court decided the case correctly, and, accordingly, its decree is affirmed.        *Decree affirmed.*